William G. WASSERMAN, Relator,

v.

Hon. H.D. BLACK, Jr., Judge,
77th District Court, Limestone
County, Texas, Respondent.

No. 10–95–208–CV.

Court of Appeals of Texas,
Waco.

Sept. 20, 1995.

W.R. Malone, Madisonville, for Relator.

J. Val Fulcher, Teague, & Joe Cannon, Cannon & Simmons, Groesbeck, for Defendants/City of Teague, Wayne Shinn, Jerrell Sartor, James Herrington, and Melvin Wylie, Real Parties in Interest.

Kenneth Stein, Dallas, for City of Teague and Jerrell Sartor, Cross–Defendants, Real Parties in Interest.

Rozanne Moore McKinney, McKinney & McKinney, Fairfield, and K. Scott Brazil, Houston, for Stanley Smith, Fred McKinley and Monette Brooke, Ind. Executrix of the Estate of William Brooke, Deceased, Real Parties in Interest.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Relator William G. Wasserman seeks a writ of mandamus from this court directing the Honorable H.D. Black, Jr., to vacate his order of May 5, 1995, that denied his motion to disqualify J. Val Fulcher from representing any of the parties to the cause of action docketed under 94–257–A in the 77th District Court of Limestone County, and directing Judge Black to grant said motion. We conclude that Wasserman is entitled to the relief sought and conditionally grant the writ.

### PROCEDURAL AND FACTUAL BACKGROUND

The City of Teague is a Class A municipality under the Texas Local Government Code. See TEX.LOC.GOV'T CODE ANN. § 5.001 (Vernon 1988). It operates with an elected mayor and city council, and a city secretary appointed by the council. Teague also has one municipal judge position. Real Parties in Interest Stanley Smith, Fred McKinley, and William Brooke at one time occupied positions of employment with the City of Teague. Smith served in the City Secretary position until he was terminated by the council on or about October 8, 1993. Until recently, McKinley served as the city's Director of Public Works until he was discharged by the council on December 17, 1993. Brooke served as Teague's municipal judge until February 14, 1994, when he was removed as the result of a "no confidence" vote from the council.

Upon considering the circumstances of their dismissals, Smith, McKinley, and Brooke (hereafter plaintiffs) concluded that the members of the council and Wasserman had conducted a "smear campaign" against them and had violated certain provisions of the Texas Open Meetings Act to foment their

discharge.[1] *See* Tex.Gov't Code Ann. §§ 551.001–.146 (Vernon 1994). Accordingly, on August 12, 1994, plaintiffs filed suit against the City of Teague, Wasserman, and councilmen Wayne Shinn, Jerrell Sartor, James Herrington, and Melvin Wylie, alleging violations of the Texas Open Meetings Act and conspiracy to libel and slander (hereafter the principal suit).

When it received notice of the principal suit, the council decided to hire attorney J. Val Fulcher to represent each of the defendants named in the suit. Furthermore, according to Wasserman, the council agreed to indemnify Wasserman and any of the individual councilmen should they incur any personal financial liability from the lawsuit. Fulcher, agreeing to represent the parties but apparently aware that his representation of multiple parties might result in a conflict of interest, on August 24 sent a letter to the council and to Wasserman warning them of this possibility. He advised each of them that they might want to retain their own independent counsel and that, should they choose to proceed with him as their attorney, they should inform him immediately when and if a conflict of interest should arise. Notwithstanding the warning, each of the defendants permitted Fulcher to represent him in the principal suit.

Fulcher wasted no time in actively representing his clients. On October 25 he filed on the behalf of the defendants an answer to the plaintiffs' petition and two counterclaims. In the same pleading, Fulcher also filed a third counterclaim solely on the behalf of Shinn, alleging $50,000 in actual damages and requesting $50,000 in punitive damages for the unlawful interference with his other employment at the United States Postal Service.

On November 15 an employee of the city not a party to this lawsuit gave a sworn statement to Police Chief Roger Brooke that on the previous day Wasserman asked him to notarize a document containing accusations of illegal activity against Mayor (formerly Councilman) Sartor and deliver the document to a councilman also not a party to this lawsuit. The employee performed his duties as instructed by Wasserman.

On November 16 Wasserman's deposition was taken by the plaintiffs' attorney with Fulcher present. The deposition apparently proceeded without incident until, in response to a question from the plaintiffs' attorney, Wasserman testified that he, as a professional auditor, did not believe the City of Teague should pay for Fulcher to represent Shinn in his counterclaim against the plaintiffs. The next day Fulcher sent a letter to the council, Mayor Sartor, and Wasserman, informing them of a possible conflict of interest between Wasserman and some or all of the remaining defendants. He asked the council to discuss the issue at its next meeting and asked Wasserman to respond in writing to his concerns.

In a letter dated December 2, 1994, Wasserman wrote to Fulcher explaining that, at the deposition, he was merely offering his opinion as an auditor that he did not believe the city should fund Shinn's counterclaim against the plaintiffs. Wasserman also indicated in the letter, however, that he understood the city had the authority to pay the attorney's fees for each of the defendants involved in the case and that, as a result, he was not opposed to the city's decision to pay the attorney's fees related to Shinn's counterclaim.

On December 5 the council voted to discharge Wasserman as City Secretary effective immediately; the council also decided to no longer provide Wasserman with legal representation in the principal suit.[2]

On December 16 Fulcher filed answers to interrogatories and responses to requests for admissions on the behalf of Wasserman in the principal suit. Also on December 16, Fulcher filed his motion to withdraw as counsel for Wasserman in the principal suit. Wasserman, who had since retained W.R.

1. Wasserman served for several months as an auditor for the city until January 1, 1994, when he was appointed by the council to the position of City Secretary. The council discharged him from that position on December 5, 1994.

2. The record does not indicate that the council gave any particular reason for Wasserman's discharge.

Malone as his own independent counsel, did not oppose the motion, and it was granted on January 23, 1995.

Also on January 23, Malone, alleging that the council had rescinded its agreement to indemnify Wasserman for any financial liability he might incur in the principal suit, filed a cross-claim in the principal suit against the City of Teague and Sartor (hereafter cross-defendants) for a declaration of his rights to indemnification (hereafter Wasserman's cross-claim). In addition, Malone filed a second cross-claim against Sartor and the City of Teague alleging, among other things, wrongful discharge, intentional infliction of emotional distress, and defamation (hereafter the second suit).[3]

On February 2 Fulcher filed a general denial on the behalf of the cross-defendants to both Wasserman's cross-claim and the second suit. At about this time, Fulcher, the council, and Sartor decided that too many potential conflicts of interest would exist if Fulcher attempted to represent Sartor and the city in either the second suit or Wasserman's cross-claim, so the determination was made to retain Kenneth R. Stein, alone, to defend these claims. Nevertheless, Fulcher remained the attorney for the defendants other than Wasserman in the principal suit.

On February 13 Stein filed a general denial on the behalf of cross-defendants to both Wasserman's cross-claim and the second suit.

On February 7 Malone filed Wasserman's motion to disqualify Fulcher from representing any of the litigants in any of the proceedings, and when it was denied he brought this mandamus petition.

### DISQUALIFICATION

Rule 1.09(a) of the Texas Disciplinary Rules of Professional Conduct provides:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05;[4] or
>
> (3) if it is the same or a substantially related matter.

TEX.DISCIPLINARY R.PROF.CONDUCT 1.09(a) (1991), reprinted in TEX.GOV'T CODE ANN. tit. 2, subtit. G app. (Vernon Supp.1995) (STATE BAR RULES art. X, § 9).

■ Although the wording of Rule 1.09(a)(2) indicates that it was designed primarily to address situations where an attorney seeks to represent a wholly new client in litigation against a former client, we believe the rule also applies under these facts where an attorney represents multiple parties and a conflict arises among them. The concern addressed by Rule 1.09(a)(2) under the former situation is also present in the latter: an attorney, who having represented a client, might use confidential information gained during that representation to the former client's detriment. See Tex.Comm. on Professional Ethics, Op. 482, 57 TEX.B.J. 200 (1994). Rule 1.09(a)(2) applies here.

Prior to Fulcher's withdrawal from his representation of Wasserman, he was actively engaged in the representation of Wasserman and his interests. Not only did he file an answer and two counterclaims on the behalf of Wasserman and the other defendants named in the plaintiffs' petition in the principal suit, but he also assisted Wasserman in answering his discovery and appeared as his legal representative when his deposition was taken on November 16, 1994. Such representation of a client necessarily involves the discussion of many factual details pertinent to the case, and Wasserman, in a sworn affidavit, asserted that many of these details were related to Fulcher in confidence.

---

3. In actuality, the second suit was brought under the same cause number as the principal suit and has not been severed from it. We, nevertheless, will refer to it as the second suit for the sake of clarity.

4. Rule 1.05 deals with an attorney's obligations in handling confidential information. TEX.DISCIPLINARY R.PROF.CONDUCT 1.05 (1991), reprinted in TEX.GOV'T CODE ANN. tit. 2, subtit. G app. (Vernon Supp.1995) (STATE BAR RULES art. X, § 9).

Fulcher's possession of this confidential information puts him in a position adverse to Wasserman. It takes little creativity to imagine a scenario where the defendants in the principal suit, in facing the prospect of incurring individual liability under the plaintiffs' causes of action, attempt to shift responsibility to one or more of their codefendants. Moreover, with the city's picking up the tab for all of the defendants except Wasserman, any reasonable attorney representing these multiple defendants would attempt to demonstrate, if the evidence would allow it, that any blame properly rests on Wasserman's shoulders.[5] While we do not suggest or presume Fulcher would misuse any confidential information, were he to continue to represent the cross-defendants in Wasserman's cross-claim or the second suit, he could be forced to choose between thoroughly representing his remaining clients and maintaining the confidentiality of the information obtained from Wasserman. *See id.; see also NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (orig. proceeding). Clients should not be put in a position where they must fret over whether the confidential information they disclosed to their previous attorney will later be used against them. *See Coker,* 765 S.W.2d at 400 (once the requirements of Rule 1.09(a)(3) are established, the court will disqualify the attorney notwithstanding any lack of suspicion that he will divulge confidential information); *Contico Int'l, Inc. v. Alvarez,* 910 S.W.2d 29, 35–36, (Tex.App.—El Paso 1995, orig. proceeding) ("In the area of use of an opposing party's confidences ... there is no need to show actual wrongdoing, or even actual use of the confidential information, in order to disqualify counsel from the representation."). Rule 1.09(a)(2) assures clients, even those clients whose attorney is involved in the multiple representation of parties, that they may freely and openly discuss all the facts of their case with their attorney and without concern that the information discussed will later be disclosed to a potential adversary. *See Cok-*

*er,* 765 S.W.2d at 400. To hold otherwise would threaten the confidential nature of the attorney-client relationship. We conclude that Rule 1.09(a)(2) prevents Fulcher's continued representation of the defendants in the principal suit and, therefore, he should be disqualified.

### WAIVER

A party who fails to seek disqualification timely waives the complaint. *Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 468 (Tex.1994) (orig. proceeding) (per curiam) (on rehearing). The court will consider the length of time between the moment the conflict became apparent to the aggrieved party to the time the motion for disqualification is filed in determining whether the complaint was waived. *See Vaughan v. Walther,* 875 S.W.2d 690, 690–91 (Tex.1994) (orig. proceeding) (per curiam). The court should also consider any other evidence which indicates the motion is being filed not due to a concern that confidences related in an attorney-client relationship may be divulged but as a dilatory trial tactic. *See Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding).

Here, there is evidence that at least as early as November 15, 1994, Wasserman suspected Sartor had committed illegal acts. Whether the alleged acts were performed in his position as a city official is not indicated in the record. Also not indicated in the record is whether these alleged acts were somehow related to the plaintiffs' complaints in the principal suit. Without any evidence to link these allegations to the plaintiffs' complaint in the principal suit, we cannot consider Wasserman's actions to have provided him with the basis of knowledge for concluding that he might have a conflict of interest with Sartor in the case.

What is clear from the record is that on November 16, 1994, Wasserman made a statement during his deposition that he did not believe the city should pay for the attorney's fees in Shinn's counterclaim against the plaintiffs in the principal suit. On November

---

5. The record indicates Stein, not Fulcher, is the attorney for Sartor and the city on Wasserman's cross-claim for indemnity. Nevertheless, Fulcher's duty to his remaining clients may demand that he shift blame to Wasserman regardless of the monetary consequences.

17 Fulcher sent Wasserman a letter informing him that this deposition testimony revealed a possible conflict of interest and asking him to explain his testimony. On December 2 Wasserman responded to Fulcher, stating, in essence, that he did not believe a conflict existed and that he was content to have Fulcher continue to represent all the named defendants in the principal suit. Wasserman was then fired on December 5. On December 16 Fulcher filed his motion to withdraw as Wasserman's counsel in the principal suit. By January 23, 1995, the date upon which Fulcher's motion to withdraw was granted, Wasserman had retained his own counsel and filed his cross-claims. His motion to disqualify Fulcher was filed on February 7.

Considering that Wasserman's complaints in the second suit and his cross-claim in the principal suit appear to be derived from the termination of his employment and the city's decision to no longer provide him indemnity in the principal suit, the date upon which Wasserman first became aware of the conflict was December 5, the day he was fired. Certainly as early as November 16, the day of his deposition, Wasserman possessed information that a real conflict may have been arising between him and the city; nevertheless, his letter to Fulcher dated December 2 indicates that he did not believe there was any true conflict. A reasonable person under these facts would not have concluded at that time that such a conflict had arisen between Wasserman and his codefendants to such a point that he needed to seek the disqualification of Fulcher from representing the codefendants in the litigation before the trial court. Having identified December 5 as the date the conflict became apparent to Wasserman, we note that approximately two months passed from this date until the date he filed his motion to disqualify.

With regard to any other evidence of a possible improper use of the motion to disqualify, nothing in the record indicates that it was filed on the eve of any final hearing or trial date. *See Vaughan,* 875 S.W.2d at 691.

The facts fail to indicate either the use of his motion to disqualify as a dilatory tactic by Wasserman or any negligence by him in bringing the motion promptly. *See Spears,* 797 S.W.2d at 656. Therefore, we conclude that Wasserman's complaint against Fulcher's representation of the defendants in the principal suit was not waived. *See Syntek Finance Corp. v. Metropolitan Life Ins. Co.,* 880 S.W.2d 26, 34 (Tex.App.—Dallas), *rev'd on other grounds,* 881 S.W.2d 319 (Tex.1994) (six weeks between time conflict became apparent and time motion to disqualify was filed did not waive complaint).

### WHETHER MANDAMUS WILL LIE

A writ of mandamus may be issued to correct a "clear abuse of discretion." *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). Issuance of a writ of mandamus is limited to those instances in which no adequate remedy by appeal exists. *Id.* at 840; *Jampole v. Touchy,* 673 S.W.2d 569, 572–73 (Tex.1984) (orig. proceeding). Disqualification of counsel is a proper subject of a mandamus proceeding. *Coker,* 765 S.W.2d at 400; *Centerline Indus. Inc. v. Knize,* 894 S.W.2d 874, 875 (Tex.App.—Waco 1995, n.w.h.). We conclude the trial court's failure to grant Wasserman's motion to disqualify was a clear abuse of discretion for which he was left with no adequate remedy by appeal.[6] We will conditionally grant the requested writ of mandamus; it will issue only upon the trial court's failure to comply with this opinion and order.

THOMAS, Chief Justice, dissenting.

I must respectfully dissent to the granting of Wasserman's petition for a writ of mandamus.

Wasserman labors under a "heavy burden" in attacking Judge Black's ruling denying the motion to disqualify Fulcher from representing *any* of his clients in the original suit filed by Smith, McKinley, and Brooke. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d

---

6. Contrary to the dissent's assertion, the record of Wasserman's pleadings and affidavits provides us a basis to conclude that Wasserman and the remaining defendants are in positions adverse to each other and that Fulcher must be disqualified pursuant to Rule 1.09(a)(2). *See Landon v. Jean-Paul Budinger, Inc.,* 724 S.W.2d 931, 938–39 (Tex.App.—Austin 1987, no writ).

916, 917 (Tex.1985). He must show that the court reached a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *See id.* Furthermore, he must establish that, under the circumstances of the case, the facts and law permitted Judge Black to make but one decision, *i.e.,* to disqualify Fulcher under Rule 1.09.[1] *See id.;* TEX.DISCIPLINARY R.PROF.CONDUCT 1.09 (1994), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon Supp.1995) (State Bar Rules art. X, § 9). This court cannot substitute its judgment on factual matters committed to the trial court's discretion.[2] *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). We can, however, review the trial court's application of the legal principles controlling its ruling. *See id.* at 840.

Because what record we do have before us conclusively shows, as of the time of the hearing on the motion to disqualify, that Fulcher was not then representing any clients in an action *against* Wasserman, I would hold that the trial court did not clearly abuse its discretion when it concluded that Fulcher was not disqualified by Rule 1.09.

### RULE 1.09

At the heart of the controversy is the correct interpretation of Rule 1.09. TEX.DISCIPLINARY R.PROF.CONDUCT 1.09 (1994). Its plain language prohibits a lawyer from representing another person in a matter "adverse to the former client." *Id.* 1.09(a). Interpretive comments to the rule clearly contemplate that for the rule to apply the representation of a second client must involve a matter "against" the former client. *Id.* 1.09 cmts. 1, 2, 3, 4. Therefore, for Rule 1.09 to apply, Fulcher must be representing another client in a matter "adverse" to Wasserman and, to be adverse, that matter must be "against" Wasserman.

### SUIT BY SMITH, MCKINLEY, AND BROOKE

When the court heard and denied Wasserman's motion to disqualify, Fulcher was then

representing the City of Teague, Sartor, Shinn, Herrington, and Wylie, as defendants and counter-plaintiffs, in the original suit filed by Smith, McKinley, and Brooke. The court had previously granted Fulcher's unopposed motion to withdraw as Wasserman's attorney, and thus Fulcher was no longer representing him as a defendant or counter-plaintiff in the original suit. W.R. Malone was apparently representing Wasserman in his capacity as a defendant and counter-plaintiff in the original suit. Therefore, at the time of the hearing, all of Fulcher's clients (City, Sartor, Shinn, Herrington, and Wylie) were in an adverse position to Smith, McKinley, and Brooke. Wasserman was also in an adverse position to Smith, McKinley, and Brooke, but he was being represented by Malone.

### WASSERMAN'S SUIT AGAINST CITY AND SARTOR

Two of Fulcher's clients (City and Sartor) were in an adverse position to Wasserman at the time of the hearing on the motion to disqualify because they are cross-defendants in Wasserman's cross-claim based on wrongful termination and a claim for indemnity. But, at the time of the hearing, Kenneth R. Stein was representing the City and Sartor in their capacities as cross-defendants on Wasserman's cross-claim. Thus, Stein—not Fulcher—was then representing the City and Sartor in a matter adverse to Wasserman.

### SEPARATE TRIALS

Moreover, prior to the hearing on the motion to disqualify, the trial court ordered that the suit by Smith, McKinley, and Brooke against the City, Sartor, Shinn, Herrington, Wylie, and Wasserman be tried separately from Wasserman's cross-claim against the City and Sartor. Accordingly, when the trial occurs on the original suit, the City, Sartor, Shinn, Herrington, and Wylie will be repre-

---

1. Wasserman based his motion to disqualify solely on Rule 1.09.

2. Wasserman's counsel states in an affidavit that Judge Black denied the motion without hearing any evidence, a statement that is not disputed in

the record. Under the circumstances, Wasserman must demonstrate a clear abuse of discretion from the record before us. *See Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.1988).

sented by Fulcher, and Wasserman presumably will be represented by Malone. In Wasserman's separate trial on his cross-claim, Stein will be representing the City and Sartor, and Wasserman will be represented by Malone.[3]

### RELIEF SOUGHT BY WASSERMAN

Wasserman seeks a writ of mandamus directing Judge Black to withdraw his order denying the motion to disqualify and directing him to enter an order disqualifying Fulcher from representing any litigant. He is thus seeking to have Fulcher disqualified from representing the City, Sartor, Shinn, Herrington, and Wylie in their capacities as defendants and counter-plaintiffs in the original suit brought by Smith, McKinley, and Brooke. Wasserman asserts by affidavit that he never consented to Fulcher's continued representation of any defendants in the original suit. He contends that the trial court should have disqualified Fulcher under Rule 1.09 because "it is to be expected that Mr. Fulcher will attempt to place all blame for any damages suffered by [Smith, McKinley, and Brooke] upon [Wasserman] rather than his remaining clients, and to aid Mr. Stein, now apparently lead counsel for the City and Sartor[,] in similar efforts in the separate trial of [Wasserman's] cross-action." He further argues that to permit Fulcher's continued participation in the case will "bring further obloquy upon the legal profession by the actuality, and certainly the appearance, of impropriety."

Rule 1.09 is the only ground asserted by Wasserman in his motion to disqualify Fulcher. He cannot show from the record that, at the time of the hearing on the motion, Fulcher was representing another person in any matter adverse to him (Wasserman), which is a threshold requirement for the rule's application. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 1.09 (1994). Setting aside his failure of proof in that regard, he also has

not demonstrated from the record that Judge Black could have made but one decision on a factual matter committed to his discretion— *i.e.,* whether a reasonable probability then existed that Fulcher's representation of his clients in the original suit will involve a violation of Rule 1.05. *See id.* 1.05 (1991), 1.09(a)(2) (1994). "Whether such a reasonable probability exists in any given case will be a question of fact." *Id.* 1.09 cmt. 4 (1994). Nor has he demonstrated from the record that at the time of the hearing Fulcher was representing another person in the same or a substantially related matter. *See id.* 1.09(a)(3) (1994). In fact, the record conclusively establishes the contrary of that proposition.

Wasserman's problem is that he is seeking to have Fulcher disqualified under Rule 1.09 even though he is not representing the City, Sartor, Shinn, Herrington or Wylie in any matter adverse to him (Wasserman). The City and Sartor are involved in the litigation in two separate legal capacities: they are defendants and counter-plaintiffs in the suit by Smith, McKinley, and Brooke, and they are cross-defendants in Wasserman's cross-claim. The City and Sartor are clearly entitled to be represented by different counsel in each capacity.

This is not say, however, that Fulcher does not owe Wasserman any continuing duties under the disciplinary rules. In fact, Fulcher is somewhat hemmed in by having represented Wasserman. First, he cannot knowingly use or divulge any confidential information obtained from Wasserman to Wasserman's disadvantage. *See id.* 1.05(b)(3) (1991). Consequently, in his representation of the City, Sartor, Shinn, Herrington, and Wylie in the original suit, Fulcher cannot disclose or use any confidential information obtained from Wasserman to Wasserman's disadvantage. Nor can he divulge any such information to Stein, who is represent-

---

**3.** At oral argument on the petition for a writ of mandamus, Fulcher stated that he will not participate in any trial on Wasserman's cross-claim. As noted in the opinion, however, the City and Sartor are engaged in litigation in two separate legal capacities, one as defendants and counter-plaintiffs in the original suit by Smith, McKinley, and Brooke and also as cross-defendants in Wasserman's cross-claim. To make his role as counsel distinctive and crystal clear, Fulcher should consider formally withdrawing as attorney for the City and Sartor in their capacities as cross-defendants in Wasserman's cross-claim.

ing the City and Sartor in their capacities as cross-defendants in Wasserman's cross-claim.

Moreover, during the trial of the suit by Smith, McKinley, and Brooke, Fulcher cannot take any action on behalf of his clients that would be in any way adverse to Wasserman. *See id.* 1.06 (1991). This precludes him, for example, from pursuing a trial strategy that would in any way shift blame to Wasserman for any of the acts alleged against Fulcher's clients in the suit by Smith, McKinley, and Brooke. His continuing duty of loyalty to Wasserman, as a former client, not only precludes Fulcher from recommending or filing any cross-claim against Wasserman on behalf of his clients but prevents him from engaging in any adverse cross-examination of Wasserman. Finally, Fulcher cannot assist Stein in any way in the preparation for trial or defense of the City and Sartor in Wasserman's cross-claim.

Thus, Fulcher can only represent his clients in the original suit in a way that accommodates his continuing duty to Wasserman under the disciplinary rules. A potential possible conflict between the representation of his clients in the original suit and his continuing duty to Wasserman does not preclude Fulcher from continuing to represent his clients in a matter that is not directly adverse to Wasserman. *See id.* 1.06 cmt. 4 (1991). It is for the City, Sartor, Shinn, Herrington, and Wylie—not Wasserman—to decide whether to proceed with an attorney who must accommodate Wasserman's continuing interests.[4] *See id.*

Wasserman contends, in effect, that the limitations Fulcher has with respect to his clients disqualifies him from representing them in the trial of a matter that is no way adverse to him (Wasserman). As already noted, however, that decision lies with Fulcher's clients, not with Wasserman. More than Wasserman's interests are implicated by the intricate facts. Any attempt to disqualify Fulcher is of substantial importance to his clients, and their interests must be considered as well. *See id.* 1.09 cmt. 9 (1994).

Accordingly, I would deny the petition for a writ of mandamus. Wasserman has not demonstrated from the record that Judge Black could have reached only one decision under the law and facts and that the decision he reached is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *See Johnson,* 700 S.W.2d at 917.

---

**4.** Under the circumstances, Fulcher should clearly and fully disclose these limitations on his representation to the City, Sartor, Shinn, Herring-

ton, and Wylie so they can decide whether to obtain different counsel. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 1.09 cmt. 9 (1994).