Petition for Writ of Mandamus Denied and
Memorandum Opinion filed September 20, 2010.

 

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00473-CV



In Re Aker Kvaerner|IHI,
Relator



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



MEMORANDUM
 OPINION

On May 27, 2010, relator, Aker Kvaerner|IHI, filed a
petition for writ of mandamus in this Court.  See Tex. Gov’t Code Ann.
§22.221 (Vernon 2004); see also Tex. R. App. P. 52.  In the petition,
relator asks this Court to compel the Honorable Dion Ramos, presiding judge of
the 55th District Court of Harris County, to set aside his January 14, 2010
order denying relator’s motion to disqualify counsel.  We deny the petition.  

Background

Relator and real party in interest, Bay Ltd., entered
into a subcontract related to the construction of a processing facility in
Cameron Parish, Louisiana, on which relator was the contractor.  After a
dispute arose between relator and Bay, Bay’s attorney, Stanley W. Curry, Jr.,
filed a demand for arbitration against relator on June 26, 2007 (the “Texas
arbitration”).  By late 2008, relator and Bay had resolved all but certain
claims related to the emission of hexavalent fume in connection with welding
operations. 

From 2000 to 2008, CBY provided legal services to
Aker Solutions U.S. or its affiliates.[1] 
Curry, who still represented Bay, joined CBY on January 1, 2009.  Curry wrote
relator’s counsel on February 12, 2009, that he had joined CBY.  The potential
attorney conflict issue was first raised in early May 2009, when relator’s
counsel called Curry to discuss the issue.  Curry responded that he did not
believe a conflict existed.  At a May 20, 2009 meeting, relator again raised
the conflict issue again with Curry, but did not demand that he discontinue his
representation of Bay.  

On June 2, 2009, relator and Bay executed the
settlement agreement and dismissed the Texas arbitration with prejudice.  Under
the settlement agreement, the parties agreed that the hexavalent chromium
claims would be heard in an arbitration proceeding pending in San Diego,
California between relator and the owner of the construction project, Cameron
LNG, LLC (the “California arbitration”).  The California arbitration was put on
hold while relator and Cameron mediated their dispute.   Relator’s claims
against Cameron were resolved at mediation, and Cameron was dismissed from the
California arbitration on August 31, 2009.  However, the hexavalent chromium claims
were not settled.  

Relator demanded in writing on September 8, 2009,
that CBY withdraw from its representation of Bay.  CBY responded that no
conflicted existed that would warrant its disqualification.[2]  Relator
and Bay entered into a Rule 11 agreement on October 19, 2009, addressing the disqualification
issue.  Relator agreed to file a motion to disqualify counsel or other pleading
in the trial court on or before November 5, 2009.  

Relator filed its counterclaim and third party action
against CBY on November 4, 2009, requesting that the trial court enjoin CBY
from representing Bay with regard to claims relating to the construction
project.  On December 2, 2009, relator filed its motion to disqualify CBY from
representation of Bay.  The trial court held a two-day hearing on the motion to
disqualify and, on January 14, 2010, signed the order denying relator’s motion,
finding that that CBY had not represented relator on the same matter; that CBY
had not represented relator on matters with a substantial relationship to the
case at bar; and that relator had waived its complaint of any attorney conflict
by the actions of its principals, employees, and attorneys.  Relator filed this
original proceeding seeking to set aside the trial court’s January 14, 2010
order.

Standard of Review

            To
be entitled to the extraordinary relief of a writ of mandamus, the relator must
show that the trial court abused its discretion, and there is no adequate
remedy by appeal.  In re Laibe Corp., 307 S.W.3d 314, 316 (Tex. 2010)
(orig. proceeding) (per curiam).  With respect to the resolution of factual
issues committed to the trial court’s discretion, the reviewing court may not
substitute its judgment for that of the trial court.  Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  Instead, the relator must
establish must establish that the trial court could have reasonably reached
only one decision.  In re Dillard Dep’t Stores, Inc., 198 S.W.3d 778,
780 (Tex. 2006) (orig. proceeding) (per curiam).  Even if the reviewing court
would have decided the issue differently, it may not disturb the trial court’s decision
unless that decision is shown to be arbitrary and unreasonable.  Walker,
827 S.W.2d at 840.  

            On
the other hand, a trial court has no discretion in determining what the law is
or applying the law to the facts.  In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).  A trial court abuses its
discretion if it reaches a decision so arbitrary and unreasonable as to
constitute a clear and prejudicial error of law, or if it clearly fails to
correctly analyze or apply the law.  In re Columbia Med. Ctr. of Las Colinas,
306 S.W.3d 246, 248 (Tex. 2010) (orig. proceeding) (per curiam); In re
Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig.
proceeding) (per curiam).  

            There
is no adequate remedy by appeal of a trial court’s ruling on a motion to
disqualify.  Nat’l Med. Enters., Inc. v. Godbey, 924 S.W.2d 123, 133
(Tex. 1996) (orig. proceeding).  

Waiver

            Bay
argues that relator waived any right to seek disqualification by failure to
timely file its motion to disqualify.  A party that fails to seek
disqualification timely waives the complaint.  Grant v. Thirteenth Court of
Appeals, 888 S.W.2d 466, 468 (Tex. 1994) (orig. proceeding) (per curiam)
(op. on reh’g); Vaughan v. Walther, 875 S.W.2d 690 (Tex. 1994) (orig.
proceeding) (per curiam).  The untimely urging of a disqualification motion
lends support to any suspicion that the motion is being used as a tactical
weapon.  Grant, 888 S.W.2d at 468.  “The court will consider the length
of time between the moment the conflict became apparent to the aggrieved party
to the time the motion for disqualification is filed in determining whether the
complaint was waived.”  Wasserman v. Black, 910 S.W.2d 564, 568 (Tex.
App.—Waco 1995, orig. proceeding).  

            Bay
asserts that relator was aware of the disqualification issue, but waited until
December 2, 2009, to file its motion for disqualification.  Although Curry sent
notice on February 12, 2009, to one of relator’s attorneys that he had joined
CBY, and further wrote another attorney for relator on CBY letterhead on March
3, 2009, about the pending settlement agreement between relator and Bay,
relator did not raise the conflict issue until May 2009, when relator’s counsel
called Curry about the issue.  Shortly thereafter, relator raised the conflict issue
again at a May 20, 2009 meeting regarding the negotiation of the settlement
agreement.  

            According
to Curry’s testimony at the disqualification hearing, relator’s representatives
at the May 20, 2009 meeting did not demand that he immediately discontinue his
representation of Bay or suggest that they would not negotiate with him because
he had confidential information.  John Seaford of Aker Solutions similarly
testified that no one at that meeting suggested that Curry had secret information
that could be used against relator or that negotiations could not continue with
Curry.  Moreover, according to Curry’s affidavit, “AK/IHI’s counsel raised the
spectre of disqualification of CBY if Bay did not settle its construction
claims with AK/IHI, and I believed that AK/IHI used the threat of
disqualification to leverage such a settlement.”  However, John Seaford testified
at the disqualification hearing that the conflict issue was not raised as a
threat or to gain leverage in the settlement negotiations with Bay.  

            Bay
asserts that relator engaged in “intense” negotiations related to the June 2,
2009 settlement agreement.  Relator disputed the intensity of the May 2009
negotiations.  John Seaford testified that the “significant commercial events”
had been negotiated as far back as late 2007, and they had reached their final
agreement on the pricing “well in advance of May [2009].”  In other words,
according to Seaford, the substance of the settlement had been negotiated and
agreed to before Curry joined CBY, and the remaining issues centered on
drafting the agreement that had been agreed to previously.  Curry, on the other
hand, testified that the “numbers had been reached, but that was just the
beginning of the negotiation[s].”  Curry explained that “the settlement
agreement was very complicated” and the negotiations were “very contentious”
and “heated.”  

            Relator
argues that it satisfactorily explained the time that elapsed between the date
CBY informed relator that it would not withdraw and the date relator both filed
suit in California seeking to enjoin CBY from representing Bay in the
California arbitration and filed its third party complaint against CBY in the
trial court.  See In re Epic Holdings, Inc., 985 S.W.2d 41, 52 (Tex.
1998) (orig. proceeding).  The California arbitration was put on hold following
the June 2009 settlement of the Texas arbitration to permit mediation of
relator’s claims against Cameron.  Therefore, there was no need to pursue the
disqualification issue and, if relator had been able to settle Bay’s claims
with Cameron, it might never have been necessary to pursue it.  The mediation
process with the owner was completed on August 28, 2009.  On September, 8, 2009—ten
days after the completion of the stand down period—relator demanded in writing
that CBY cease its representation of Bay.  CBY denied the existence of a
conflict in writing on September 22, 2009.  Relator agreed in the October 19,
2009 Rule 11 agreement to file a motion to disqualify counsel or other pleading
seeking relief related to the disqualification issue on or before November 5,
2009.  

            Relator
further contends that there is nothing to suggest that the disqualification
issue is being asserted as a dilatory tactic because it did not wait until the
day of trial or final hearing to raise the issue.  See Vaughan, 875
S.W.2d at 691 (holding party waived disqualification by waiting until day of
final hearing to raise disqualification issue even though she was aware of
issue six months and one half months earlier).  Instead, the disqualification
issue was the sole initial focus of the parties’ efforts from the very
beginning of the filing of the third party complaint against CBY.  

            Relator
has not asserted that it was not aware of the disqualification issue when Curry
first sent notice to relator’s counsel in February 2009, or when Curry wrote
relator’s counsel on March 3, 2009, on CBY letterhead regarding the pending
settlement.  There is no dispute that relator knew of the disqualification
issue in May 2009, when it raised the issue with Curry.  However, relator did
not demand that Curry or CBY withdraw from representation of Bay during the May
2009 negotiations after Curry informed relator that he did not believe a conflict
existed.  Instead, relator waited until September 2009 to demand CBY’s
withdrawal and until December 2009 to file its motion to disqualify.  The
parties disputed the significance of the May 2009 negotiations and whether
relator raised the conflict issue at that time as “leverage” in the settlement. 


The
trial court explicitly decided these fact issues in favor of Bay.  We conclude
that the trial court did not abuse its discretion in finding that relator
waived the disqualification issue by the actions of its principals, employees
and attorneys.[3] 


Conclusion

Relator has not established its entitlement to the
extraordinary relief of a writ of mandamus.  Accordingly, we deny relator’s
petition for writ of mandamus.

 

                                                                                    PER
CURIAM

 

 

 

Panel consists of Justices Brown, Sullivan, and Christopher.

 









[1] Aker
Solutions U.S. is engaged in engineering, procurement, and construction of
processing plants.  IHI is Aker Solutions U.S.’s partner on the underlying
construction project.





[2] On
October 2, 2009, relator wrote the AAA that it objected to CBY’s representation
of Bay in the California arbitration and further informed the AAA that it had
filed a lawsuit in San Diego County, California, seeking to enjoin CBY from
representing Bay in the California arbitration.  





[3] Because
of our disposition on the issue of waiver, we need not address the other issues
raised in relator’s petition.