**Petition for Writ of Mandamus Denied and Memorandum Opinion filed December 1, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00615-CV

---

### IN THE INTEREST OF KASHIF KAHN, ET AL, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 14-DCV-214129**

---

## OPINION

Relators Kashif Kahn, ACGI Group, Inc., Anantasai, LLC, Reform Healthcare Management, Ltd., Samma Universal Group Inc., and Shayan & Hiba Group Ltd. filed a petition for writ of mandamus in this Court arising from the disqualification of an attorney. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. Relators ask this court to compel the Honorable

Maggie Perez-Jaramillo, presiding judge of the 400th District Court of Fort Bend County, to vacate her March 16, 2015 order disqualifying Deborah Crain from representing any defendant in this lawsuit. We deny the petition for writ of mandamus.

## Background

The real parties are Kishwar Sharma and his wife, Padma Sharma. On April 21, 2014, Mr. Sharma filed suit against the Advance Consulting Group, Inc. ("ACGI"), Kashif Khan, Abdul Majeed Samma, and Murtaza Samma (collectively "defendants"). The Sharmas are directors and majority shareholders of ACGI. Khan is a director and shareholder of ACGI, and served as ACGI's president.

Kishwar Sharma's original petition alleges actions for breach of contract, fraud, and conversion, based on Khan's and ACGI's breach of an alleged promise to prepare and file all paperwork necessary for the Sharmas to obtain an EB-5 visa to immigrate to the United States. The petition seeks return of the Sharmas'$1.115 million investment in ACGI. The petition also alleges that defendant Khan breached fiduciary duties he owed as an officer and director by misappropriating ACGI's assets and entering into self-dealing transactions with ACGI that were undertaken without adequate consideration.

On May 21, 2014, defendants filed an answer in which Deborah Crain ("Crain") appeared as counsel for all of the defendants. Through early November 2014, Crain represented defendants by attending a deposition, serving various written discovery requests, filing an amended answer, special exceptions and counterclaim, and filing motions for summary judgment.

2

On November 24, 2014, the Sharmas filed a second amended petition, adding Padma Sharma as a plaintiff. On March 9, 2015, the Sharmas filed a notice of non-suit of their claims against ACGI and a third amended petition that added ACGI Group, Inc., Anantasai, LLC, ("Anantasai"), Reform Healthcare Management Ltd. ("RHMG"), Samma Universal Group Inc. ("SUG"), and Shayan & Hiba Group Ltd. ("SHG") as defendants. The third amended petition alleges that Khan, after receiving the Sharmas' investment of over $1.1 million in ACGI, fraudulently transferred these funds to Anantasai, RHMG, SUG, and SHG.

On March 11, 2015, about three and half months after Padma Sharma joined as a plaintiff, the Sharmas filed a motion to disqualify Crain as counsel for all of the defendants. In their motion, the Sharmas argued that Crain's joint representation of ACGI and the other defendants violates Texas Disciplinary Rules of Professional Conduct 1.06 and 1.09(a) because ACGI and the other defendants are adverse to each other.

On April 16, 2015, at the hearing on the motion to disqualify, the trial court signed an order that quashed defendants' subpoenas for the Sharmas to testify at the hearing, and an order that disqualified Crain and her law firm from representing any defendants in this lawsuit.

On April 28, 2015, defendants filed a motion for reconsideration/rehearing of the order disqualifying Crain. After hearing this motion on May 11, 2015, the trial court signed an order denying the motion.

## Mandamus Standard

"Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal." *In re Sanders*, 153 S.W.3d 54, 56-57 (Tex. 2004) (orig. proceeding). "Disqualification is a measure that can cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings." *Id*. "Thus, the burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification. *Id*. However, we review a trial court's decision on a motion to disqualify an attorney using an abuse of discretion standard. *In re Sanders,* 153 S.W.3d at 56. "In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id*.

## The Trial Court Acted Within its Discretion in Not Finding Waiver

In their first issue, relators argue that the Sharmas waived their motion to disqualify through delay. Relators emphasize that more than ten months passed between April 21, 2014, when the lawsuit initially was filed, and March 11, 2015, when the motion to disqualify was filed.

A party who does not file a motion to disqualify opposing counsel in a timely manner waives the complaint. *See Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex. 1994); *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex.

4

1994). In determining whether a party has waived a complaint, the reviewing court should consider the time period between when the conflict becomes apparent to the aggrieved party and when the aggrieved party moves to disqualify. *See Vaughan*, 875 S.W.2d at 690–91; *In re Louisiana Texas Healthcare Mgmt., L.L.C.*, 349 S.W.3d 688, 689-90 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). The court should consider whether any evidence indicates the motion is being filed not due to a concern that attorney-client confidences may be divulged, but as a dilatory trial tactic. *Id.*; *Wasserman v. Black*, 910 S.W.2d 564, 568 (Tex. App.—Waco 1995, orig. proceeding). The court should also consider whether significant discovery has occurred and the delay has prejudiced the other party. *See In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 53 (Tex. 1998) (orig. proceeding).

We reject relators' contention that the waiver analysis should focus only on the ten months that elapsed between the litigation's start and the date a disqualification motion was filed. Padma Sharma did not join the suit until November 24, 2014. The record does not indicate that she had a dilatory purpose in not joining the suit earlier. Although Kishwar Sharma was a litigant for a longer time before the motion to disqualify was filed, the parties have not identified and we have not located any authority that allows the delay of one party in seeking disqualification to be attributed to another party. Accordingly, in evaluating waiver, we consider only the time that elapsed after Padma Sharma joined the litigation.

In view of the allegations in the Sharmas' petitions that Khan fraudulently transferred funds of ACGI to four of the other defendants, the conflict between Crain representing both ACGI and the other defendants should have been apparent

5

to Padma Sharma when she joined the suit as a plaintiff on November 24, 2014. Approximately three and a half months elapsed between the date on which Padma Sharma joined the litigation and the date on which the motion to disqualify was filed.

There is no evidence in the record that Padma Sharma filed the motion to disqualify as dilatory trial tactic. The case had not yet been set for trial. The record does not show that any discovery occurred between Padma Sharma's entry into the lawsuit and the date on which disqualification was sought. In *Wasserman*, 910 S.W.2d at 569, the court of appeals held that a two-month delay did not waive the motion to disqualify because the facts did not indicate that the motion was being used as a dilatory tactic. None of the decisions cited by relators indicate that a delay of less than four months, when there is no trial setting, results in waiver. Under these circumstances, we conclude that relators have not shown that the trial court abused its discretion in determining that the disqualification request was not waived.

## The Trial Court Acted Within its Discretion in Finding that Crain Is Disqualified

In their second and third issues, relators argue that the Sharmas did not establish that a violation of the Texas Disciplinary Rules of Professional Conduct occurred; they further contend that the trial court misapplied the law. We find these arguments to be without merit.

The Sharmas argue that Crain is disqualified from representing ACGI and the other defendants under Rule 1.09, which states:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client;

(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or

(3) if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof. 1.09(a). Although the wording of Rule 1.09(a) indicates that it was designed primarily to address situations where an attorney seeks to represent a new client in litigation against a former client, it also applies when an attorney represents multiple parties and a conflict arises among them. *See Wasserman*, 910 S.W.2d at 567.

A lawyer in a civil case may not "represent two or more clients in a matter if there is a substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to another client in the matter . . .". *In re B.L.D.*, 113 S.W.3d 340, 346-47 (Tex. 2003) (quoting Restatement (Third) of the Law Governing Lawyers, § 128 (2000)). "[A]dversity is a product of the likelihood of the risk and the seriousness of its consequences." *Nat'l Med. Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996). Parties are adverse when the risk to the formerly represented party is serious, even though the risk may be small. *See id*. An attorney should not be placed in a position where she may be forced to choose between zealously representing his clients and maintaining the confidentiality of information received from former clients; this situation disqualifies the attorney from representing any defendant in the case. *See*

7

*In re Roseland Oil & Gas, Inc*., 68 S.W.3d 784, 787-88 (Tex. App.—Eastland 2001, no pet.).

Comment 4A to Rule 109(a) states that the "same" matter aspect of this prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer. For lawyers, the Texas Supreme Court has adopted a standard requiring disqualification under Rule 1.09 whenever counsel undertakes representation of an interest that is adverse to that of a former client, if the matters embraced in the pending suit are "substantially related" to the factual matters involved in the previous suit. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399-400 (Tex. 1989). This strict rule is based on a conclusive presumption that confidences and secrets were imparted to the attorney during the prior representation. *Id*. at 400; *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 833 (Tex. 1994). "If the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during the representation." *In re Kahn*, 14-13-00081-CV, 2013 WL 1197895, at *4 (Tex. App.—Houston [14th Dist.] Mar. 26, 2013, orig. proceeding) (citing *Phoenix*, 887 S.W.2d at 833).

Additionally, Rule 1.06(b) provides that a lawyer shall not represent a person if it reasonably appears that the representation may become adversely limited by the lawyer's responsibilities to another client. Tex. Disciplinary R. Prof. 1.06. Comment 4 to Rule 1.06 states that the critical question is the likelihood that a conflict exists or will eventuate. *Id*. Thus, a lawyer should not jointly represent parties if it is likely that a conflict between them will eventuate.

8

A court may rely on the parties' pleadings to determine if the parties are adverse. *See Wasserman*, 910 S.W.2d at 569 n.6. The Sharmas' live petition alleges that Khan fraudulently transferred the Sharmas' $1.1 million ACGI investment to defendants Anantasai, RHMG, SUG, and SHG. Based on this allegation, ACGI and the other defendants are adverse because ACGI has claims that it may bring against the other defendants and there is a serious risk of adversity. There is a conclusive presumption that confidences and secrets of ACGI were imparted to Crain. *See Coker*, 765 S.W.2d at 400. Thus, Crain is disqualified from representing ACGI and the other defendants under Rule 1.09(a)(3).

Crain also is disqualified under Rule 106 because it appears that the Sharmas, as ACGI's majority shareholders, may cause ACGI to bring suit against the other defendants for the alleged fraudulent transfers.

We conclude that relators have not shown that the trial court abused its discretion in finding that Crain is disqualified under the Rules of Professional Conduct from representing any of the defendants.

## The Record Does Not Show that the Trial Court Denied Relators the Opportunity to Present Evidence

Relators argue that the trial court abused its discretion by not allowing them to present any evidence. The record does not support this assertion.

At the April 16, 2015 hearing on the motion to disqualify, relators' counsel asked to be allowed to present evidence. The record does not show that the trial court refused this request, or that relators offered any evidence or called any witnesses to testify. To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure a ruling from the

court. *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 334 (Tex. App.—Dallas 2008, no pet.); *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The record does not show that relators met these requirements.

Relators also argue that the trial court erred in quashing their subpoena for the Sharmas to testify at the hearing. However, relators have not demonstrated that this potential testimony would have been relevant or that its exclusion was prejudicial.

Relators gave two reasons at the hearing for requesting the Sharmas' testimony. First, relators argued that they needed to examine Mr. Sharma regarding the statement in his declaration that there were only three directors, not four. Relators did not explain to the trial court how the number of ACGI directors is relevant to whether ACGI and the other Defendants were adverse to each other under Rule 109(a)(3). Our holding that the trial court did not abuse its discretion in disqualifying Crain is not based on whether ACGI had three or four directors. Accordingly, Mr. Sharma's potential testimony on this issue is immaterial to our decision. *See In In re EPIC Holdings, Inc.*, 985 S.W.2d at 53 (trial court's exclusion of evidence was immaterial given the supreme court's resolution of the disqualification issues).

Second, relators argued to the trial court that they needed to examine the Sharmas regarding when they knew that they needed to take action to disqualify Crain. We have assumed that Padma Sharma knew that she had a basis for seeking Crain's disqualification when she joined the suit on November 24, 2014, and have held that no waiver resulted from the three and a half months that elapsed before

10

she sought disqualification. In view this holding, Padma's potential testimony on this issue is immaterial. *See id*.

Relators assert that, at the May 11, 2015 hearing on relators' motion for reconsideration, the trial court "refused to consider any live-witness testimony or consider any additional evidence." Again, the record does not support this assertion. The record does not show that relators offered any live testimony that the trial court excluded. In fact, the trial court admitted several written exhibits that relators offered at the hearing.

The Sharmas filed a motion asking this court to strike from the appellate record certain exhibits that relators offered at the hearing of relators' motion for reconsideration that the trial court ordered stricken. This court has not relied on these exhibits because they were stricken by the trial court and relators have not argued in their petition that this was error. Moreover, the stricken exhibits do not appear to be material to this court's decision.

## Conclusion

Relators have not established the requirements for mandamus relief. We therefore deny their petition for writ of mandamus.

/s/     William J. Boyce
Justice


Panel consists of Justices Boyce, McCally, and Donovan.

11