## In re Barbara Nell TAYLOR.

### No. 10–02–027–CV.

Court of Appeals of Texas,
Waco.

Feb. 27, 2002.

James V. Fulcher, Attorney At Law, Teague, for appellant.

Ben Selman, Keith Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Relator Barbara Nell Taylor (Barbara) seeks a writ of mandamus directing the Honorable Sam Bournias (Respondent), Judge of the 87th District Court of Freestone County, to (1) vacate his order that denied her motion to disqualify the law firm of Naman, Howell, Smith & Lee of Waco (the Naman firm) from representing her husband Terry James Taylor (Terry) in their divorce case and (2) grant the motion. We conclude that Barbara is entitled to the relief sought and conditionally grant the writ.

In 1998, Terry and his brother, Everett Lane Taylor (Lane), incorporated a business known as Taylor Living Centers, Inc. (the corporation). In 2000, they sought the services of the Naman firm for estate planning, and as part of the plan, the firm prepared a "Stockholder Agreement" (the agreement) covering the shares of the corporation that had been issued in the names of Terry and Lane (500 shares each). Terry and Lane, as the named shareholders, signed the agreement on March 30, and Barbara and Kimberly Ann Taylor (Kim), Lane's wife, signed it to bind their interests in the shares to the terms of the agreement. Lane also signed the agreement as president of the corporation. The agreement, among other things, set the "agreed net worth" of the corporation at $200,000, obligated the estate of a deceased shareholder to sell its shares to the surviving shareholder based upon the market value of the shares (which would be the "agreed net worth"), and provided for a change in the "agreed net worth" from time to time.

As part of the estate planning process, the Naman firm also prepared wills and medical and financial powers of attorney for both Terry and Barbara. On April 21, 2000, Wesley J. Filer, a member of the

firm, wrote them a joint letter, which states in part:

> In preparing your estate planning documents, *we represented both of you* since we understand that any provisions that each of you made in the documents for the other were purely voluntary and not motivated or induced by the other's promise. Based on this understanding, we have not viewed our representation as involving parties with conflicting or adverse interests.

(Emphasis added).

In September of 2001, the Naman firm, acting through Ben Selman, filed a petition for divorce in Freestone County on behalf of Terry. Barbara secured other counsel, who "as a courtesy," sent a letter to Selman calling his attention to the Naman firm's prior representation of Barbara and asking that the firm withdraw without the necessity of a motion to disqualify. Selman responded to that request by asserting:

- the firm does not represent Barbara "on this matter";
- the preparation of the wills is not a matter at issue in the divorce case and has "no apparent relationship" to it; and
- the agreement "occurred between Mr. Taylor and his brother and not with regard to Mrs. Taylor."

The letter essentially denies that an attorney-client relationship existed between the Naman firm and Barbara with respect to the stockholder agreement. Upon receipt of Selman's letter, Barbara filed a motion to disqualify the firm, which was heard and denied by Respondent without a reason being stated. Barbara then filed this original proceeding.

A writ of mandamus may be issued to correct a "clear abuse of discretion" provided no adequate remedy by appeal exists. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). Disqualification of counsel is a proper subject of a mandamus proceeding. *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (orig.proceeding); *Centerline Indus. Inc. v. Knize,* 894 S.W.2d 874, 875 (Tex.App.-Waco 1995, orig. proceeding). The standard of review of a ruling on a motion to disqualify is limited to the question of whether the trial court abused its discretion. *See Coker,* 765 S.W.2d at 400; *see also Metropolitan Life Ins. Co. v. Syntek Fin. Corp.,* 881 S.W.2d 319, 321 (Tex.1994).

Barbara testified at the hearing on the motion to disqualify that the Naman firm gave them advice about the agreement and how to put it into effect, that the corporation owns and operates five nursing homes, that Terry's mother Chelsea is also in the nursing-home business, and that payments had been made by the corporation to Chelsea's companies.

Terry filed an inventory and appraisement, listing the 500 shares of the corporation as a community asset and stating: "An evaluation of the value is being analyzed and this information will be provided." Barbara contends that the market value of the shares has been established by the agreement, to which she is a party, and has not been changed. Terry contends that the agreement has no effect because neither Terry nor Lane has died. Were the value of the community-property interest in the shares to be set at $100,000, that asset would have more than five times the net value of the next largest community asset—the home having a net equity of $18,000 according to Terry's inventory and appraisement. Excluding the shares and the home, the total value of the remaining assets—again, according to Terry—is $9,316.85. We must conclude that the effect of the agreement, if any, in determin-

ing the value of the shares of the corporation will be a primary subject of dispute in the divorce case.

■ Although the Texas Disciplinary Rules of Professional Conduct are not controlling as standards governing motions to disqualify, they have been viewed by the courts as guidelines that articulate considerations relevant to the merits of such motions. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding). Because disqualification is a severe remedy, the courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. Thus, the burden is on the movant to establish the necessity for disqualification with specificity. *See id.*

Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct provides, in part:

**Rule 1.06. Conflict of Interest: General Rule**

. . .

(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute.

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(d), (e), (f), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9). Comment 9 to the rule states:

In certain situations, such as in the preparation of loan papers, or the preparation of a partnership agreement, a lawyer might have properly undertaken multiple representation and be confronted subsequently by a dispute among those clients in regard to that matter. Paragraph (d) forbids the representation of any of those parties in regard to that dispute unless informed consent is obtained from all of the parties to the dispute who had been represented by the lawyer in that matter.

*Id.* 1.06 cmt. 9.

■ The record conclusively shows that the Naman firm represented multiple parties, *i.e.,* Terry, Barbara, Lane, and Kim during the estate planning process and in preparation of the agreement. *See id.* 1.06(d). The record further shows that there is a dispute in the divorce proceeding about the effect of that agreement and that Barbara, having been represented by the Naman firm, has not consented to the firm's representation of Terry in the divorce case. *See id.* When the violation was called to the firm's attention, Selman rejected the notion that the firm had represented Barbara in connection with the agreement and declined to withdraw. Under Rule 1.06(d), Filer—the lawyer with the Naman firm who did the estate planning work, prepared the agreement, and acknowledged that the firm represented Barbara—is disqualified from representing any of the multiple parties to the agreement (the "matter" in the words of the rule) in a dispute among those clients in regard to that matter. *See id.* Because

Filer is disqualified, Selman and all other members of the firm are disqualified. *See id.* 1.06(f).

■ Terry also contends that Barbara waived her right to disqualification by waiting too long to file the motion. Terry's suit was filed on September 17, 2001. Selman sent the petition to Barbara by letter with a waiver of citation, then talked to her when she called him. He advised her to secure a lawyer. A counter-petition was filed on October 1. When Barbara called the Filer letter to the attention of her lawyer, he sent a letter to Selman requesting that the Naman firm withdraw without the necessity of a motion. Selman declined on November 29, and the motion to disqualify was filed on November 30.

Explaining the timing, Barbara testified that she is in poor physical condition and, when she received a discovery request for copies of documents that were in her possession, she was unable to go to the upstairs attic where they were stored to retrieve them. When her son got the records for her, she went through the seven or eight boxes and discovered the Filer letter stating that she was a client of the Naman firm. She was not cross-examined about any delay in asserting the disqualification issue, and her testimony was not contradicted. She was the only witness who testified.

Nothing in the record indicates that the motion was filed on the eve of any final hearing or trial date; indeed when the motion was filed and heard, the case was not set for trial. *See Wasserman v. Black*, 910 S.W.2d 564, 569 (Tex.App.-Waco 1995, orig. proceeding). Under these facts, Respondent could not have reasonably found that Barbara waived her right to insist on disqualification.

We conclude the trial court's failure to grant Barbara's motion to disqualify was a clear abuse of discretion for which she was left with no adequate remedy by appeal. We conditionally grant the requested writ of mandamus to order Respondent to vacate his December 20, 2001 order and enter an order granting the motion to disqualify the Naman firm. Because we are confident that Respondent will comply with our decision within fourteen days, the writ will issue only if he fails to do so.

Justice GRAY dissenting.

TOM GRAY, Justice, dissenting.

There are at least two possible determinations the trial court could have made that would support the decision not to disqualify Terry's chosen attorney. The trial court could have determined that the representation of Barbara in connection with estate planning, including the stockholder agreement, is not substantially related to the divorce. Also, the trial court could have determined that Barbara waived her claim by failing to timely assert it.

It was Barbara's burden to establish the basis of her motion to compel the disqualification of opposing counsel. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990); *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex.1989). We review the trial court's determination for an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *R.J. Gallagher Co. v. White*, 709 S.W.2d 379, 381 (Tex.App.-Houston [14th Dist.] 1986); *In re Bahn*, 13 S.W.3d 865, 872 (Tex.App.-Fort Worth 2000).

To fully understand the trial court's ruling it is important to review some of the events leading up to the motion to disqualify. This litigation commenced with a copy of the petition being sent to Barbara accompanied by a transmittal letter on Naman Howell Smith & Lee letterhead on September 24, 2001. The parties immedi-

ately engaged in discovery. A reading of the correspondence in the record would cause the reader to conclude that the relationship between the attorneys quickly became acrimonious. By October 24, 2001, a dispute had arisen between the attorneys regarding a trial setting. Barbara's attorney responded to a letter from Terry's attorney with the following:

I do not adhere to trial by secretary. My secretary does not set my trial docket. My secretary does not make agreements for trial dates; my secretary does not make any agreements for any matter with opposing counsel or his/her staff. ... Letter writing on this point is ridiculous ... The only way I know to handle this sort of conduct with you and your firm is to advise that no agreements in this case, and any other case with your firm, will be made without a Rule 11 agreement. Further, my secretary will answer no questions; she will only take messages.

On the next day, Terry proposed a trial date in February 2002. On the bottom of this October 25, 2001 letter is a note which states: "Need to Receive Inventory-may Require Depo & must Resolve Disqualification Issue." The note is initialed by Barbara's attorney but is not dated. The parties continued to engage in discovery over the next month. Then on November 26, 2001, Barbara's counsel writes opposing counsel:

My client came to me this morning with documents prepared by your firm in March, 2000, along with correspondence from your firm dated in April, 2000. She recalled these documents over the weekend and called this to my attention at the earliest appointment this morning ... The long and short of this is that my client feels uncomfortable with your firm suing her when she was a former client. She has asked that I file a Motion to Disqualify. As a courtesy to

you, I have not filed that Motion yet and I ask that you consider this point.

Three days later, Terry's attorney responded to the letter regarding disqualification. The majority has characterized the letter as denying any prior representation of Barbara with respect to the stockholder agreement. The letter denies only that the law firm had represented her in the divorce and states that any work that was done for her was not in any way related to the divorce. The motion was filed the day after this response.

With regard to the argument that Barbara waived her right to require disqualification, I cannot conclude that the trial court abused its discretion by holding that Barbara waived her complaint. From the evidence discussed herein, it appears that Barbara was aware of the issue more than a month before it was raised with opposing counsel during a period of active discovery and trial preparation. Only when pushed for a trial setting was the motion filed. Under the facts and circumstances of this case I cannot hold that the only proper conclusion that the trial court could have reached was that there was no waiver.

With regard to whether the prior representation is "substantially related" to the issues in the divorce, the majority is dangerously close to a mandamus review of valuation methodology issues. Barbara argues there is no question that the stockholder agreement determines the value of the stock for these divorce proceedings, even though it was drafted as an estate planning tool in contemplation of death. She relies on *Finn v. Finn*, 658 S.W.2d 735, 741 (Tex.App.-Dallas [5th Dist.] 1983, n.r.e.). If she is right, the stockholder agreement establishes the value of the stock to be used in a just and right division of the community estate. If she is wrong, the value of the stock will be determined in the usual manner of testimony by the owner and possibly experts. By her argument

in this mandamus proceeding, it appears she has conceded that the valuation process of the stock is an open issue. Thus, the trial court had to decide whether the stockholder agreement, prepared in connection with estate planning, substantially related to the divorce proceeding, and in particular the just and right division of property. If the trial court makes its decision regarding how the stock must be valued in the divorce, and that process does not involve the stockholder agreement, the trial court would be correct in determining the representation in·connection with the stockholder agreement was not substantially related to the divorce proceeding.

But it is premature for us to inject ourselves into this issue. Barbara did not establish the requisite level of interrelationship between the estate planning and the divorce proceeding in order to establish that the trial court could have only determined that the matters were "substantially related." Accordingly, I cannot hold that the trial court abused its discretion, in refusing to find, on the record that is properly before us, that the attorney representing Terry should be disqualified.

For the forgoing reasons, I respectfully dissent.