### In re TXU U.S. HOLDINGS COMPANY d/b/a Tu Electric.

#### No. 10–02–220–CV.

Court of Appeals of Texas, Waco.

Dec. 31, 2002.

---

Joann N. Wilkins and David M. Weaver Burford & Ryburn, L.L.P., Dallas, for Appellant/Relator,

B. Scott Kruka, Jeffrey B. Simon and Peter A. Kraus Water & Kraus, L.L.P., Dallas, for Appellee/Respondent.

Before Chief Justice REX D. DAVIS, Justice VANCE, and Justice CUMMINGS (Sitting by Assignment).

## OPINION

REX D. DAVIS, Chief Justice.

TXU U.S. Holdings Company d/b/a TU Electric ("TXU") seeks a writ of mandamus compelling Respondent, the Honorable Alan Mayfield, Judge of the 74th District Court of McLennan County, to grant TXU's motion to disqualify the firm of Waters & Kraus, L.L.P. from representing the plaintiffs in the underlying suit.

## BACKGROUND

Joe and Carol Mitcham filed suit against TXU and others for injuries Joe allegedly sustained as a result of asbestos exposure on premises owned by TXU. Waters & Kraus represents the Mitchams in this lawsuit. The firm of Burford & Ryburn, L.L.P. represents TXU. The alleged disqualification in this proceeding arises from the fact that a former employee of Burford & Ryburn worked for a period of time as an attorney with Waters & Kraus. She is no longer employed with Waters & Kraus.

Gayle Mortola–Strasser worked for Burford & Ryburn as a legal assistant while attending law school. During her employment with the firm, she provided substantial assistance in the firm's representation of TXU as a defendant in asbestos suits. She conducted research, collected and reviewed confidential documents, conferred with TXU representatives, and assisted in formulating defense strategies for current and future asbestos litigation.

After Mortola–Strasser graduated from law school and obtained her law license, Waters & Kraus hired her. As a result of negotiations with Burford & Ryburn, Andrew Waters and Mortola–Strasser signed an "Agreement Regarding Conflicts of Interest" in which they agreed that neither they nor any attorneys at Waters & Kraus would participate in any claims or suits against TXU involving asbestos exposure.

Mortola–Strasser left the employment of Waters & Kraus in January 2002. Waters & Krause filed the underlying suit against TXU on January 23, 2002. Burford & Ryburn filed the motion to disqualify on March 11. After an April 10 hearing, Respondent signed an order denying the motion on June 19.

## APPLICABLE LAW

Mandamus will issue to correct a clear abuse of discretion when there is no other adequate remedy at law. *In re Epic Holdings, Inc.,* 985 S.W.2d 41, 54 (Tex. 1998) (orig.proceeding); *In re Taylor,* 67 S.W.3d 530, 532 (Tex.App.-Waco 2002, orig. proceeding). Mandamus will issue when a trial court abuses its discretion in determining whether counsel is disqualified because the relator has no adequate remedy by appeal. *Id.*

Although the Disciplinary Rules of Professional Conduct do not determine disqualification issues, they do provide guidance. *Epic Holdings,* 985 S.W.2d at 48. Disciplinary Rule 1.09 is the pertinent rule here:

Rule 1.09. Conflict of Interest: Former Client

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(2) if the representation in reasonable probability will involve a violation of Rule 1.05.

(3) if it is the same or a substantially related matter.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

(c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph

(a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Tex. Disciplinary R. Prof'l Conduct 1.09, *reprinted in* Tex. Gov.Code. Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).

Disciplinary Rule 1.05 is also implicated. Rule 1.05 prohibits an attorney from disclosing confidential client information. *Id.* 1.05. Rule 1.05 provides several exceptions under which an attorney may disclose confidential information. However, none of these exceptions applies to the present case.

 An attorney is disqualified from undertaking representation of an interest which is adverse to that of a former client and which involves a matter "substantially related" to the subject matter of the former client's representation. *Epic Holdings*, 985 S.W.2d at 52; *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 129–31 (Tex.1996) (orig.proceeding). If an attorney is disqualified in this manner, any firm with which the attorney is associated is likewise disqualified. *Epic Holdings*, 985 S.W.2d at 52; *Nat'l Med. Enters.*, 924 S.W.2d at 131–32.

In this situation, the Supreme Court has determined that an irrebuttable presumption exists that the other attorneys in the firm have access to the confidences of the former clients of the attorney who is disqualified. *Nat'l Med. Enters.*, 924 S.W.2d at 131. The Supreme Court set out the reasons for this presumption:

> One reason for this presumption is that it would always be virtually impossible for a former client to prove that attorneys in the same firm had not shared

confidences. Another reason for the presumption is that it helps clients feel more secure. Also, the presumption helps guard the integrity of the legal practice by removing undue suspicion that clients' interests are not being fully protected.

*Id.* (citations omitted).

According to Rule 1.09(c), the firm will continue to be disqualified even after the attorney who previously represented the adverse client departs "if the representation in reasonable probability will involve a violation of Rule 1.05." Tex. Disciplinary R. Prof'l Conduct 1.09(c).[1]

 A different rule applies to a firm which hires a nonlawyer who previously worked for opposing counsel. *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 75 (Tex.1998) (orig.proceeding); *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834–35 (Tex.1994) (orig.proceeding). If the former client establishes that the nonlawyer worked on its case, a conclusive presumption exists that the client's confidences were imparted to the nonlawyer. *Am. Home Prods.*, 985 S.W.2d at 74; *Phoenix Founders*, 887 S.W.2d at 834.

 Unlike the irrebuttable presumption which exists for a disqualified attorney however, a rebuttable presumption exists that a nonlawyer has shared the confidences of a former client with his new employer. *Am. Home Prods.*, 985 S.W.2d at 75; *Phoenix Founders*, 887 S.W.2d at 834–35. The presumption may be rebutted "only by establishing that 'sufficient precautions have been taken to guard against any disclosure of confidences.'" *Am. Home Prods.*, 985 S.W.2d at 75 (quot-

---

1. The disqualification also continues after the attorney leaves the firm if the adverse party "questions the validity of the lawyer's services or work product." Tex. Disciplinary R. Prof'l Conduct 1.09(a)(1), *reprinted in* Tex. Gov.Code. Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex State Bar R. art. X, § 9). TXU does not question the validity of Mortola–Strasser's services or work product during her employ with Burford & Ryburn.

ing *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex.1994) (orig.proceeding)).

■ As the Supreme Court explained:

*the only way* the rebuttable presumption can be overcome is: (1) to instruct the legal assistant "not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation," and (2) to "take other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment, absent client consent."

*Id.* (citing *Phoenix Founders*, 887 S.W.2d at 835).

The Court explained that nonlawyers are treated differently because of "a concern that the mobility of a nonlawyer could be unduly restricted." *Am. Home Prods.*, 985 S.W.2d at 75; *Phoenix Founders*, 887 S.W.2d at 835.

## APPLICATION

■ Because Mortola–Strasser worked as a nonlawyer for Burford & Ryburn and as an attorney for Waters & Kraus, we must first determine whether the rebuttable presumption for nonlawyers enunciated in *American Home Products* and *Phoenix Founders* or the irrebuttable presumption for attorneys enunciated in *National Medical Enterprises* applies. Mortola–Strasser is an attorney. Thus, the concern of restricted mobility noted above does not apply to her.

■ For this reason, we conclude that the irrebuttable presumption of *National Medical Enterprises* applies.[2] Thus, an irrebuttable presumption existed that the other attorneys at Waters & Kraus had access to the confidences of TXU while Mortola–Strasser was employed with that firm. *Nat'l Med. Enters.*, 924 S.W.2d at 131. The issue we must decide is whether that irrebuttable presumption continued after Mortola–Strasser left the firm. Consideration of the reasons for which the Supreme Court enunciated this irrebuttable presumption leads us to conclude that the presumption does continue.

As the Court explained, the presumption is irrebuttable because "it would *always* be virtually impossible for a former client to prove that attorneys in the same firm had not shared confidences." *Id.* (emphasis added). Additionally, the irrebuttable presumption serves to help the former client feel more secure and to protect the integrity of the legal profession. *Id.*

TXU is not in an appreciably better position now to prove that Mortola–Strasser and other attorneys at Waters & Kraus had not shared confidential information about TXU than when Mortola–Strasser was employed at that firm. Nor should TXU have any reason to feel more secure now than it did when Mortola–Strasser worked for opposing counsel. In conclusion, a requirement that the irrebuttable presumption continues to apply after the disqualified attorney leaves the firm serves to uphold the integrity of the legal profession.

Waters & Kraus argues that, under Disciplinary Rule 1.09(c), it should not be disqualified unless TXU establishes a "reasonable probability" that Mortola–Strasser shared confidential information regarding TXU to other attorneys at the firm. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT

---

**2.** Waters & Kraus concedes as much by characterizing the "Agreement Regarding Conflicts of Interest" as an agreement "to do exactly what they were required to do under Rule 1.09."

1.09(c). However, the Disciplinary Rules do not determine disqualification issues; they only provide guidance. *Epic Holdings*, 985 S.W.2d at 48. As we have already observed, TXU is not in an appreciably better position now to establish such a "reasonable probability" than before. Thus, we conclude that the better approach is to maintain the irrebuttable presumption recognized in *National Medical Enterprises.*

In sum, we hold that an irrebuttable presumption exists that Mortola–Strasser shared the confidences of TXU with other attorneys at Waters & Kraus during her employ with that firm. Thus, Waters & Kraus is disqualified from representing the Mitchams in the suit against TXU. Accordingly, Respondent abused his discretion by denying TXU's motion to disqualify Waters & Kraus.

For the foregoing reasons, we conditionally grant the requested writ. The writ will issue if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that he has vacated the June 19, 2002 order denying TXU's motion to disqualify and has signed an order granting the motion.