**In re Joe and Carol MITCHAM, Relators.**

**No. 03–0481.**

Supreme Court of Texas.

March 26, 2004.

David M. Weaver, Joann N. Wilkins, Burford & Ryburn, L.L.P., Dallas, for Other Party In Interest.

Charles S. Siegel, Jeffrey Blake Simon, Peter Andrew Kraus, B. Scott Kruka, Susan Lea Hays, Waters & Kraus, L.L.P., Dallas, for Relator.

John G. Bissell, Linda B. Bovasso, C. Patrick Waites, Strong Pipkin Bissell & Ledyard, LLP, Houston, W. Miller Thomas, Fairchild Price Thomas Haley & Willingham, LLP, Center, Melissa K. Ferrell, William Francis Mahoney, Victoria L. Ott, Segal McCambridge Singer & Mahoney, Austin, Jack T. Jamison, Christopher Whitener Lewis, Godwin & Gruber, P.C., Dallas, Kay Andrews, Brown McCarroll, LLP, Austin, Kenneth D. Rhodes, Dunn Kacal Adams Pappas & Law, Houston, Frank B. Davis, Rob L. Wiley, Locke Liddell & Sapp LLP, Houston, for Respondent.

PER CURIAM.

From 1995 until August 1997, Gayle Mortola–Strasser worked as a legal assistant for Burford & Ryburn, L.L.P. on asbestos cases brought against (among others) TXU U.S. Holdings Company d/b/a TU Electric (TXU). Shortly after she earned her law license in 1997, Waters & Kraus, a firm representing asbestos plaintiffs in suits against TXU (among others), expressed interest in hiring her as an attorney. To avoid any conflicts, C. Andrew Waters contacted Gregory Jensen, Mortola–Strasser's supervisor at Burford & Ryburn. The two negotiated a settlement of the only asbestos case the Waters firm had pending against TXU, and Waters and Mortola–Strasser signed an "Agreement Regarding Conflicts of Interest" in which they agreed that neither they nor any attorneys at Waters & Kraus would participate in asbestos suits against TXU or share any information about them.

More than four years later, Mortola–Strasser left the employment of Waters & Kraus. Within the same month, Waters & Kraus filed the underlying asbestos suit by Joe and Carol Mitcham against TXU. The trial court denied a motion to disqualify the Waters & Kraus firm, but the court of appeals disagreed. 110 S.W.3d 62. The Mitchams seek mandamus relief from the latter court's order disqualifying their chosen counsel, arguing it was a clear abuse of discretion for which they have no adequate remedy at law. *See In re Epic Holdings, Inc.,* 985 S.W.2d 41, 54 (Tex.1998).

Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct prohibits a

lawyer from representing a current client against a former client in a matter that (1) questions the validity of the earlier representation, (2) involves a reasonable probability that confidences will be violated, or (3) is substantially related to the earlier representation. Tex. Disciplinary R. Prof'l Conduct 1.09(a), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G app. A (Tex. State Bar R. art. X, '9). Other members in a disqualified lawyer's *current* firm are similarly disqualified in all three of these instances. Tex. Disciplinary R. Prof'l Conduct 1.09(b).

But other members of a disqualified lawyer's *prior* firm are disqualified only in the first two instances — matters attacking the prior work and matters risking disclosure of confidences. *See id.* at 1.09(c). The Mitchams do not question the validity of Mortola–Strasser's earlier work for TXU, and the substantial similarity between that work and the current case could not alone disqualify Waters & Kraus after she left that firm. Thus, the only question presented here is whether the law firm's representation of the Mitchams will in reasonable probability involve a violation of any confidences Mortola–Strasser may have gained during her earlier work for TXU.

■ On this question, we have recognized different standards for attorneys and their assistants. For attorneys, there is an irrebuttable presumption they gain confidential information on every case at the firm where they work (whether they work on them or not), *National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex.1996), and an irrebuttable presumption they share that information with the members of a new firm, *see Henderson v. Floyd*, 891 S.W.2d 252, 254 (Tex.1995) (per curiam). For legal assistants, there is an irrebuttable presumption they gain confidential information only on cases on which they work, and a rebuttable presumption they share that information with a new employer. *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834 (Tex.1994). The last presumption is rebutted not by denials of disclosure, but by prophylactic measures assuring that legal assistants do not work on matters related to their prior employment. *Id.* at 835–36.

■ The parties here disagree whether Mortola–Strasser is governed by the rule for attorneys (which she was at her second firm) or legal assistants (which she was during most of her work at the first). For the first-firm presumption, the distinction makes no difference here—Mortola–Strasser actually worked on TXU asbestos cases, so there is an irrebutable presumption she gained confidential information in either role. But the attorney/assistant distinction would make a difference for the second-firm presumption, as Waters & Kraus instituted a sufficient prophylactic measure—abstinence from TXU asbestos cases for the entire firm.

The court of appeals held the rule regarding attorneys applied and disqualified Waters & Kraus even though Mortola–Strasser had left. While the court relied on our reasoning in cases finding an attorney's disqualification also disqualified his or her *current* firm, we have never addressed a situation like this in which an attorney passed through a *prior* firm that did no work that could be questioned during that interregnum. As noted, Rule 1.09 makes a distinction between current and prior firms, and we have never considered what presumption might apply to a prior firm that did no work that could be questioned until after a disqualified attorney left. Nevertheless, under the peculiar facts of this case, Waters & Kraus would be disqualified no matter what rule applied.

Waters agreed to forego asbestos cases against TXU in the "Agreement Regard-

ing Conflicts of Interest." The agreement contained no termination date, but the Mitchams argue we can imply a reasonable time limit, *see, e.g., Mattern v. Herzog,* 367 S.W.2d 312, 319 (Tex.1963), which they suggest is when Mortola–Strasser left the firm. But the agreement also stated the parties would not "[s]hare any information with any person regarding the facts and circumstances surrounding [TXU's] use of asbestos." Because the duty to guard confidences is permanent (at least for Mortola–Strasser), we cannot imply a termination date that applies to only some of the provisions and some of the parties.

In *National Medical Enterprises, Inc. v. Godbey,* we held an attorney for one defendant who owed no duty of confidentiality to a co-defendant was nevertheless bound by such a duty when he signed a joint defense agreement. 924 S.W.2d at 129. Because of this voluntary confidentiality agreement, any attorneys with whom he was associated during that representation were disqualified as well. *Id.* at 131–32.

Here, Waters agreed not to share any information regarding TXU's use of asbestos; the agreement contained no time limit, and at least as to confidentiality none can be implied. Even if Waters would otherwise have been free to bring asbestos claims against TXU after Mortola–Strasser left (an issue we do not decide), his confidentiality agreement precludes him from doing so. Because Waters cannot give the Mitchams the representation to which they are entitled without mentioning facts surrounding TXU's use of asbestos (which his agreement precludes him from doing), he and the members of his firm are disqualified. *See id.* at 129. Accordingly, we deny the Mitchams' petition for writ of mandamus.