IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 03-0481

════════════

 

In re Joe and Carol Mitcham,
Relators

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

PER
CURIAM

 

 

From 1995 until August 1997, Gayle Mortola-Strasser worked as a legal assistant for Burford & Ryburn, L.L.P. on
asbestos cases brought against (among others) TXU U.S. Holdings Company d/b/a
TU Electric (TXU).  Shortly after she
earned her law license in 1997, Waters & Kraus, a firm representing
asbestos plaintiffs in suits against TXU (among others), expressed interest in
hiring her as an attorney.  To avoid any
conflicts, C. Andrew Waters contacted Gregory Jensen, Mortola-Strasser=s supervisor at Burford
& Ryburn. 
The two negotiated a settlement of the only asbestos case the Waters
firm had pending against TXU, and Waters and Mortola-Strasser
signed an "Agreement Regarding Conflicts of Interest" in which they
agreed that neither they nor any attorneys at Waters & Kraus would
participate in asbestos suits against TXU or share any information about them.

More than four years later, Mortola-Strasser left
the employment of Waters & Kraus. 
Within the same month, Waters & Kraus filed the underlying asbestos
suit by Joe and Carol Mitcham against TXU. 
The trial court denied a motion to disqualify the Waters & Kraus
firm, but the court of appeals disagreed. 
110 S.W.3d 62. 
The Mitchams seek mandamus relief from the
latter court=s order
disqualifying their chosen counsel, arguing it was a clear abuse of discretion
for which they have no adequate remedy at law. 
See In re Epic Holdings, Inc., 985 S.W.2d 41,
54 (Tex. 1998).           Rule 1.09
of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from
representing a current client against a former client in a matter that (1)
questions the validity of the earlier representation, (2) involves a reasonable
probability that confidences will be violated, or (3) is substantially related
to the earlier representation.  Tex. Disciplinary R. Prof=l Conduct 1.09(a),
reprinted in Tex. Gov=t Code, tit. 2, subtit. G app. A (Tex. State Bar R. art. X, ' 9).  Other members in a disqualified lawyer=s current firm are similarly
disqualified in all three of these instances. 
Tex. Disciplinary
R. Prof=l Conduct 1.09(b).  

But other members of a disqualified lawyer=s prior firm are disqualified
only in the first two instances C
matters attacking the prior work and matters risking disclosure of
confidences.  See id. at 1.09(c).  The Mitchams do not question the validity of Mortola-Strasser=s
earlier work for TXU, and the substantial similarity between that work and the
current case could not alone disqualify Waters & Kraus after she left that
firm.  Thus, the only question presented
here is whether the law firm=s
representation of the Mitchams will in reasonable
probability involve a violation of any confidences Mortola-Strasser
may have gained during her earlier work for TXU.

On this question, we have recognized different
standards for attorneys and their assistants. 
For attorneys, there is an irrebutable
presumption they gain confidential information on every case at the firm where
they work (whether they work on them or not), National Medical Enterprises,
Inc. v. Godbey, 924 S.W.2d 123, 131 (Tex. 1996),
and an irrebuttable presumption they share that
information with the members of a new firm, see Henderson v. Floyd, 891
S.W.2d 252, 254 (Tex. 1995) (per curiam).  For legal assistants, there is an irrebutable presumption they gain confidential information
only on cases on which they work, and a rebuttable
presumption they share that information with a new employer.  Phoenix Founders, Inc.
v. Marshall, 887 S.W.2d 831, 834 (Tex. 1994).  The last presumption is rebutted not by
denials of disclosure, but by prophylactic measures assuring that legal
assistants do not work on matters related to their prior employment.  Id. at 835-36.

The parties here disagree whether Mortola-Strasser is governed by the rule for attorneys
(which she was at her second firm) or legal assistants (which she was during
most of her work at the first).  For the
first-firm presumption, the distinction makes no difference here C Mortola-Strasser
actually worked on TXU asbestos cases, so there is an irrebutable
presumption she gained confidential information in either role.  But the attorney/assistant distinction would
make a difference for the second-firm presumption, as Waters & Kraus instituted
a sufficient prophylactic measure C
abstinence from TXU asbestos cases for the entire firm.

The court of appeals held the rule regarding
attorneys applied and disqualified Waters & Kraus even though Mortola-Strasser had left. 
While the court relied on our reasoning in cases finding an attorney=s disqualification also disqualified
his or her current firm, we have never addressed a situation
like this in which an attorney passed through a prior firm that did no
work that could be questioned during that interregnum.  As noted, Rule 1.09 makes a distinction between
current and prior firms, and we have never considered what presumption might
apply to a prior firm that did no work that could be questioned until after a
disqualified attorney left. 
Nevertheless, under the peculiar facts of this case, Waters & Kraus
would be disqualified no matter what rule applied.

Waters agreed to forego asbestos cases against TXU
in the AAgreement
Regarding Conflicts of Interest.@  The agreement contained no termination date,
but the Mitchams argue we can imply a reasonable time
limit, see, e.g., Mattern v. Herzog,
367 S.W.2d 312, 319 (Tex. 1963), which they suggest is when Mortola-Strasser
left the firm.  But the agreement also
stated the parties would not A[s]hare
any information with any person regarding the facts and circumstances
surrounding [TXU=s] use of
asbestos.@  Because the duty to guard confidences is
permanent (at least for Mortola-Strasser), we cannot
imply a termination date that applies to only some of the provisions and some
of the parties.

In National Medical Enterprises, Inc. v. Godbey, we held an attorney for one defendant who owed
no duty of confidentiality to a co-defendant was nevertheless bound by such a
duty when he signed a joint defense agreement. 
924 S.W.2d at 129.  Because of this voluntary confidentiality
agreement, any attorneys with whom he was associated during that representation
were disqualified as well.  Id. at 131-32. 


Here, Waters agreed not to share any information
regarding TXU=s use of
asbestos; the agreement contained no time limit, and at least as to confidentiality
none can be implied.  Even if Waters
would otherwise have been free to bring asbestos claims against TXU after Mortola-Strasser left (an issue we do not decide), his
confidentiality agreement precludes him from doing so.  Because Waters cannot give the Mitchams the representation to which they are entitled
without mentioning facts surrounding TXU=s
use of asbestos (which his agreement precludes him from doing), he and the
members of his firm are disqualified.  See
id. at 129. 
Accordingly, we deny the Mitchams= petition for writ of mandamus.

 

OPINION DELIVERED:  March
26, 2004