

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00050-CV

**IN RE CMH HOMES, INC.** and
Vanderbilt Mortgage and Finance, Inc.

Original Mandamus Proceeding[1]

Opinion by:     Karen Angelini, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  June 5, 2013

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

This case stems from attorney Ricardo Carrillo's previous legal representation of Relators

CMH Homes, Inc. and Vanderbilt Mortgage and Finance, Inc. and his subsequent position as

County Attorney of Duval County, Texas.  When Duval County filed suit against Relators, and

Carrillo's name appeared on the pleadings, Relators filed a motion to disqualify not only

Carrillo, but also attorneys David Rumley and Baldemar Gutierrez and their firms with which

Carrillo "was associated" in regard to the litigation.  Based on Relators' objections, Carrillo

voluntarily withdrew as counsel for Duval County in the matter.

---

[1] This proceeding arises out of Cause No. DC-12-09, styled *Duval County, Texas v. Vanderbilt Mortgage and Finance, Inc., CMH Homes, Inc., Bruce Robin Moore, Jr., and Benjamin Joseph Frazier*, pending in the 229th Judicial District Court, Duval County, Texas, the Honorable Ana Lisa Garza presiding.

Relators argue the trial court abused its discretion in refusing to disqualify the lawyers and firms representing the County on the same matter. We agree. Carrillo's previous legal representation of Relators on a substantially related matter created an irrebuttable presumption that Carrillo not only possessed confidential information but shared that information with Rumley and Gutierrez. Accordingly, we reverse the trial court's denial of the motion to disqualify the attorneys' firms and we conditionally grant the writ of mandamus.

### FACTUAL BACKGROUND

Relators CMH Homes, Inc. and Vanderbilt Mortgage and Finance, Inc. are subsidiaries of Clayton Homes, Inc. (hereinafter CMH). CMH sells manufactured homes and Vanderbilt Mortgage finances the purchases. Due to many of the buyers' limited cash and credit, Vanderbilt provided "land-in-lieu" financing. This type of financing allows the buyer to use equity in a piece of property to be pledged as collateral in lieu of requiring a large cash down-payment. The pledged property in question can be the buyer's personal property or a relative's property and does not have to be the land on which the home was located.

### A. Store 214 – 2004 Carrillo Representation

In 2004, attorneys David Rumley and Baldemar Gutierrez, on behalf of several plaintiffs, asserted numerous claims arising out of transactions at CMH's Store 214 in Corpus Christi, Texas. The claims alleged land was pledged, under the land-in-lieu financing provisions, without owner knowledge. They also alleged many of the documents were either forged or not properly notarized. As a result of this litigation, CMH released approximately 400 land-in-lieu liens in 2005.

While defending Store 214 claims filed by Rumley and Gutierrez, CMH hired several different attorneys and firms to represent the company. One of these hires included Ricardo Carrillo, who served as local counsel in litigation in Duval County, Texas. At that time, in

addition to his private law practice, Carrillo also worked part-time as a Duval County Attorney. There is no question that during Carrillo's 2004 legal representation of CMH, Carrillo worked with other CMH attorneys and representatives discussing facts regarding Store 214 and litigation strategy for defending CMH against fraud, forgery, and notary claims. All of Carrillo's work for CMH was associated with the claims pending out of Store 214's transactions. Carrillo was subsequently elected as the County Attorney of Duval County.

**B.      The January 2012 Lawsuit**

At some point prior to January 2012, after judicial admissions were made by CMH during a federal lawsuit, Duval County made a determination to file suit against CMH, alleging claims arising out of the Store 214 transactions. In preparing to do so, the Duval County Commissioners' Court elected to use Rumley and Gutierrez, as outside counsel, to prosecute the civil action. Based on the mandamus record, Ricardo Carrillo, in his capacity as the duly-elected County Attorney, was asked to negotiate the terms of the contract between the County and Rumley and Gutierrez. Carrillo acknowledges that he met with Rumley and/or Gutierrez on two different occasions to negotiate the terms of the employment contract and that he approved Rumley's and Gutierrez's contingency contract with the County.

On January 18, 2012, Rumley and Gutierrez filed suit on behalf of Duval County based on alleged fraudulent notarizations and CMH's failure to record documents prepared at Store 214. The County alleged fraud, forgery, and notary allegations. The Original Petition was signed by David Rumley and listed Baldemar Gutierrez, Javier Gutierrez, and Ricardo Carrillo as "Attorneys for Plaintiff." All parties agree the January 2012 pleadings involved the same allegations, the same transactions, the same land-in-lieu program, and the activities of the same CMH personnel at the Store 214 on which Carrillo had previously represented CMH. Carrillo was listed on the pleadings as an attorney for Plaintiff Duval County.

Six weeks later, on March 1, 2012, CMH attorney J. A. "Tony" Canales sent a letter to Carrillo, reminding him of his previous representation of CMH and requesting he withdraw from his "representation of Duval County in this lawsuit." On March 14, 2012, Carrillo filed a "Motion for Leave to Withdraw as Counsel." Rumley and Gutierrez argue the motion to withdraw was simply a "form" used by Carrillo to withdraw from a case in which he never intended to represent Duval County against CMH. We note, however, the motion was signed by Carrillo as "Attorney for Plaintiff Duval County, Texas" and did not indicate Carrillo's name was inadvertently included in the pleadings. To the contrary, the motion, in its entirety, provides:

> Ricardo O. Carrillo, Counsel for Plaintiff Duval County, Texas, moves for leave to withdraw as counsel in this case. In support thereof, counsel shows the following:
>
> 1. Counsel has advised Plaintiff or its representative of this motion to withdraw and they have agreed to it.
> 2. The case is not set for trial.
>
> WHEREFORE, PREMISES CONSIDERED, Plaintiff moves the Court to allow Ricardo O. Carrillo to withdraw as attorney of record for Plaintiff Duval County, Texas.

On April 10, 2012, CMH filed a motion to disqualify Rumley and Gutierrez as plaintiff's counsel based on Carrillo's previous 2004 legal representation of CMH. As support for such, CMH set forth its allegation that the January 2012 lawsuit centers on "allegations of 'rampant forged notarizations of documents by [CMH],' 'false notarizations,' and non-notary sales associates signing a notary's name to the documents." CMH further argued that the plaintiff's third amended original petition even refers to deposition testimony given in prior cases in which Carrillo represented CMH against claims being prosecuted by Rumley and Gutierrez.

Included among the numerous attached exhibits was an affidavit, from attorney Robert Guerra, outlining Carrillo's involvement in the prior CMH litigation asserted by plaintiffs who

were represented by Rumley and Gutierrez. Specifically, Guerra stated that he participated in "meetings and telephone conferences in which Mr. Carrillo participated including discussion of how these CMH Homes, Inc. employees processed land-in-lieu transactions at Store 214. The same meetings and telephone conferences included discussion of how these CMH Homes, Inc. employees filed liens related to land-in-lieu transactions, including liens filed in Duval County."

In its response to CMH's motion to disqualify, Rumley and Gutierrez argue that no confidential information was exchanged. More specifically, they argue that CMH failed to prove the disclosure of any information, much less confidential information by "co-counsel." Rumley and Gutierrez contend that Carrillo's name was only on the petition as a "formality as a duly elected official of Duval County."[2] According to attached affidavits of Gutierrez, Rumley, and Carrillo: (1) the attorneys met twice to discuss the contingency fee contract; (2) they never discussed anything substantive regarding the case; (3) Rumley and Gutierrez never obtained information from Carrillo; (4) Carrillo did not draft or review the petition and had no involvement in the filing of the case; (5) Carrillo's only involvement was approving the employment agreement of Rumley and Gutierrez; and (6) listing Carrillo as co-counsel was "mere formality."

On September 20, 2012, the trial court held a contested hearing. Rumley's and Gutierrez's argument centered on the lack of evidence regarding any communications between the attorneys and that Carrillo neither participated in the drafting of the pleadings or in the case in any way. Approximately two months later, the trial court denied the motion to disqualify and

---

[2] Although Rumley and Gutierrez argue "Mr. Carrillo promptly moved for an order withdrawing himself as a counsel of record . . . within two weeks of learning that he was mistakenly included on the signature block for the original petition," there is no evidence to support either Carrillo was unaware his name was included as "Attorney for Plaintiff Duval County" or that the County Commissioners did not intend for Carrillo to represent the county's interest in the matter. *See* Real Party in Interest's Response to Petition for Writ of Mandamus, p. 3-4. In fact, during oral argument counsel conceded there is no evidence that Carrillo was unaware his name was included on the pleadings.

filed findings of fact and conclusions of law outlining the lack of evidence or credible evidence that any substantive conversations occurred, that Carrillo participated in the drafting of the petition, or that Carrillo shared any confidential information with either Rumley or Gutierrez.

## STANDARD OF REVIEW

Mandamus relief is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion when there is no other adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it constitutes a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding); *Walker*, 827 S.W.2d at 839.

Because an appeal is inadequate when a trial court abuses its discretion in failing to disqualify a party's attorney, mandamus is an appropriate means of correcting the court's order regarding disqualification. *See In re Basco*, 221 S.W.3d 637, 639 (Tex. 2007) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show "that the trial court could reasonably have reached only one decision." *Liberty Nat'l First Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840).

## MOTION TO DISQUALIFY

"An attorney who has previously represented a client may not represent another person in a matter adverse to the former client if the matters are the same or substantially related." *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) (orig. proceeding) (citing *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 833 (Tex. 1994)); *see also In re*

*Epic Holdings, Inc.*, 985 S.W.2d 41, 52 (Tex. 1998) (orig. proceeding); *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 129–31 (Tex. 1996) (orig. proceeding). If an attorney is disqualified in this manner, any firm with which the attorney is associated is likewise disqualified. *In re Epic Holdings*, 985 S.W.2d at 52; *Nat'l Med. Enters.*, 924 S.W.2d at 131–32.

## A.     Texas Disciplinary Rules

The disciplinary rules are not determinative of whether counsel should be disqualified; yet, courts have traditionally looked to the disciplinary rules for guidance. *In re Epic Holdings, Inc.*, 985 S.W.2d at 48. Rule 1.09(a) of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from representing a current client against a former client in a matter that (1) questions the validity of the earlier representation, (2) involves a reasonable probability that confidences will be violated, or (3) is substantially related to the earlier representation. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (West 2013).

The subsequent paragraph addresses a lawyer's ethical obligation when that lawyer's previous representation conflicts with other attorneys based on his current employment or relationships. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(b). "[W]hen lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any of them practicing alone would be prohibited from doing so by paragraph (a)." *Id*.

Rumley and Gutierrez argue Carrillo never actually engaged in representing Duval County, as a lawyer, against CMH. We are not persuaded by this argument. There is no question that Carrillo, as the County Attorney, negotiated and hired Rumley and Gutierrez to file suit against CMH. Carrillo also knew this representation was related to facts and allegations against which Carrillo had previously represented CMH. Moreover, there is no evidence that Carrillo was unaware his name was included on the original petition as an attorney representing

Duval County against his former client. Indeed, the mandamus record shows that when counsel for CMH requested Carrillo withdraw from his representation of Duval County in the lawsuit, he complied and filed a motion to withdraw.

The parties also disagree as to the meaning of the term "members of or associated with a firm." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(b). Although the disciplinary rules are not legislative statutes, the analysis of such should be no different. *See In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008) (orig. proceeding) (providing that we apply the principles of statutory construction to our disciplinary rules); *see also In re Seven-O Corp.*, 289 S.W.3d 384, 389 (Tex. App.—Waco 2009, orig. proceeding [mand. denied]) (applying statutory rules of construction to the Texas Disciplinary Rules of Professional Conduct). In *City of San Antonio v. Caruso*, 350 S.W.3d 247, 250 (Tex. App.—San Antonio 2011, pet. denied) (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)), this court reiterated that "we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." The rules do not prescribe a particular definition of "associated with." We thus apply the plain and common meaning of the word "associated," within its reasonable context, which we determine to be "closely connected (as in function or office) with another." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 75 (11th ed. 2004). With this definition in mind, we construe Rule 1.09(b) to include not only partners, employees, and associates within the same firm, but individuals working together on a case or issue regardless of their actual status as a member of the firm, of-counsel, or co-counsel. To hold to the contrary, that Rule 1.09(b) only applies to actual employees of the same law firm, would amount to disregarding the plain and common meaning of "associate with."

**B.      Distinction Between Non-lawyers and Lawyers**

Courts have long recognized different ethical standards and considerations for attorneys and for their assistants.  Attorneys' actions result in an irrebuttable presumption of gained confidential information on *every* case at the firm where they work, whether they work on them or not, and an irrebuttable presumption of sharing that information with the members of a new firm.  *Nat'l Med. Enters., Inc.*, 924 S.W.2d at 131; *see also In re Mitcham*, 133 S.W.3d 274, 276 (Tex. 2004) (orig. proceeding).  For legal assistants, however, that same irrebuttable presumption only applies to cases *on which they work*, and the presumption that the legal assistant shared that information with a new employer is rebuttable.  *Phoenix Founders, Inc.*, 887 S.W.2d at 834-36; *In re Mitcham*, 133 S.W.3d at 276 (these measures include "prophylactic measures assuring that legal assistants do not work on matters related to their prior employment.").

Before the trial court, both parties relied solely on *In re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998) (orig. proceeding).  This case, however, is distinguishable based on the fact the individual switching sides from one party to the other was a paralegal, not an attorney.  *Id*. at 74.  *In re American Homes* involved approximately 1,000 plaintiffs represented by two law firms suing Wyeth-Ayerst Laboratories.  *Id.* at 71.  Wyeth's local counsel contracted with an individual at his firm to interview potential fact witnesses and meet with counsel and coordinate meetings between counsel and prospective fact and expert witnesses.  *Id.*  Several months later, plaintiffs' counsel hired the same employee.  *Id.* at 72.  Wyeth subsequently filed a motion to disqualify plaintiffs' counsel based on the employee's previous status with Wyeth and subsequent activities for plaintiffs' attorneys.  *Id.*

The *In re American Home Products* Court explained that because the employee worked on litigation in the same case, the exact information possessed by the employee was irrelevant because she "must be subject to . . . a conclusive presumption that confidences and secrets were

imparted." *Id*. at 74 (quoting *Phoenix Founders, Inc.*, 887 S.W.2d at 834). The Court continued that the "risk that a person who has functioned as a legal assistant may disclose confidential information to a new employer under circumstances such as these is unacceptably high." *Id*. at 74–75.

Recognizing the obvious differences between control of projects between lawyers and non-lawyers, and potential unreasonable restrictions on a non-lawyer's mobility, the Court explained that although the presumption of shared confidences still exists for cases on which the non-lawyer employee worked, the presumption is ***rebuttable***. *Id*. at 75 (emphasis added); *see also Phoenix Founders, Inc.*, 887 S.W.2d at 835; *In re Guar. Ins. Servs.*, 343 S.W.3d at 134 (holding no reason to question that non-lawyer employee's failure to remember particular case led to conflict with new employer). With a lawyer, however, the presumption of shared confidences is ***irrebuttable***. *See Nat'l Med. Enters., Inc.*, 924 S.W.2d at 131 ("There is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm."); *In re Columbia Valley*, 320 S.W.3d at 824.

When the person changing firms is a lawyer, and the second firm is representing the opposing party, not only is the presumption irrebutable that the attorney possessed confidential information, but there is a second presumption that the attorney will share the confidences with the second firm. *In re Columbia Valley*, 320 S.W.3d at 824. "The effect of this second presumption is the mandatory disqualification of the second firm." *In re Guar. Ins. Servs.*, 343 S.W.3d at 134 (citing *Phoenix Founders, Inc.*, 887 S.W.2d at 833–34).

The crux of the automatic disqualification under Rule 1.09(a) is based on the original attorney-client relationship between the lawyer and his former client. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09 cmt. 2. From that attorney-client relationship, two

presumptions arise: 1) that confidences have been shared with an attorney actively handling the client's case, and 2) that the attorney will in turn share those same confidences with other attorneys in any firm with which he or she practices. *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989).

In the present case, Carrillo was not a paralegal, but actually ***represented*** CMH in the capacity of an attorney. He had a substantial relationship with CMH, its representatives, and its other counsel. We remain mindful that no question exists as to whether Carrillo obtained confidential information about CMH, its theories and its defenses during his legal representation of CMH. As to Carrillo's representation of Duval County against CMH, at a minimum, he hired, or negotiated the employment contract for Rumley and Gutierrez to file suit against CMH, with the knowledge that Carrillo had previously represented CMH against identical claims raised by Rumley and Gutierrez. *See In re Columbia Valley*, 320 S.W.3d at 823. Carrillo possessed knowledge of CMH confidences and, thus, the first presumption is irrelevant. We, therefore, concentrate on the second presumption's mandatory disqualification of Rumley and Gutierrez.

In *National Medical Enterprises*, the Texas Supreme Court opined that the court's conclusions regarding an irrebuttable presumption were based on "[t]he difficulty in proving a misuse of confidences" and the "doubt cast upon the integrity of the legal profession." *Nat'l Med. Enters., Inc.*, 924 S.W.2d at 132. The Court further explained:

> One reason for this presumption is that it would always be virtually impossible for a former client to prove that attorneys in the same firm had not shared confidences. Another reason for the presumption is that it helps clients feel more secure. Also, the presumption helps guard the integrity of the legal practice by removing undue suspicion that clients' interests are not being fully protected.

*Id*. at 131 (citations omitted). Although Carrillo did not actually "join" either Rumley's or Gutierrez's firms, he nevertheless was associated with them for the purpose of suing CMH Homes, and the ethical reasons for concern are still present.

Duval County points our attention to *EnStar Petroleum Co. v. Mancias*, 773 S.W.2d 662, 664 (Tex. App.—San Antonio 1989, orig. proceeding), wherein this court held an attorney moving to a new firm did not disqualify the new firm. Yet, the facts in *EnStar* are completely distinguishable. The attorney in question never worked on the previous case while at his prior firm. *Id.* at 663. Therefore, although the attorney himself could be imputed with information gained at his prior firm, the court held the information was insufficient to disqualify his new firm. *Id*. at 664–65. Unlike the *Enstar* attorney that "had no knowledge of the case" at his previous firm, Carrillo was not only familiar with the litigation as a result of his previous 2004 legal representation of CMH, but he was involved in planning and strategy meetings and was specifically named as counsel on the pleadings. *See id*. at 663. As the Court held in *In re Columbia Valley Healthcare Systems*, 320 S.W.3d at 826, the "test for disqualification is met by demonstrating a genuine threat of disclosure, not an actual materialized disclosure."

## CONCLUSION

Because Ricardo Carrillo previously represented CMH on a substantially related matter, the irrebutable presumption that he obtained confidential information applies. Additionally, because there is no question that Carrillo possessed intimate knowledge of the previous litigation, any lawyer with which Carrillo was associated is also prohibited from representing a client in a similar matter adverse to CMH. Thus, whether he shared information with Rumley and Gutierrez is not the question at issue. And although the actual sharing of confidential information might not have occurred, the presumption is irrebuttable and the appearance of impropriety is too great.

Carrillo was prohibited from representing a current client, Duval County, against a former client, CMH Homes, in a matter that is substantially related to the earlier representation.

*See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a). When Carrillo embarked upon negotiations with Rumley and Gutierrez, he was acting in an adverse manner toward CMH Homes, regarding the exact same issues out of Store 214, and the presumption attached. Moreover, Carrillo's name appeared on the pleadings as Attorney for Duval County and his motion to withdraw acknowledges Carrillo's position as Attorney for Duval County in the suit filed against CMH. Based on the presumption of shared confidences, Carrillo's involvement necessitated the disqualification of Rumley and Gutierrez.

Accordingly, we conditionally grant the petition for writ of mandamus. The trial court is ordered to vacate its October 2, 2012 order and enter an appropriate order disqualifying David Rumley and Baldemar Gutierrez and their law firms. The writ will issue only if the trial court fails to comply within fourteen days.


Karen Angelini, Justice